UNITED STATES of America

v.

Carl P. FOGEL, Appellant.

No. 86–3063.

United States Court of Appeals, District of Columbia Circuit.

Argued April 9, 1987.

Decided Sept. 15, 1987.

Kenneth Michael Robinson, Washington, D.C., for appellant.

Dennis R. Carluzzo, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Roger M. Adelman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, and MIKVA and BORK, Circuit Judges.

BORK, Circuit Judge:

Appellant, Carl P. Fogel, raises two issues on appeal from the district court's order on resentencing. First, appellant argues that the district court violated the Constitution's double jeopardy clause[1] by increasing his sentence after he had begun serving it. Appellant also argues that his due process rights were violated when the

district court refused to allow him to rebut by testimony the government's memorandum in aid of sentencing. We agree that the district court's resentencing violated the double jeopardy clause and therefore vacate the second sentence and remand with instructions to reinstate the originally imposed sentence as modified in accordance with this opinion. We also find that the district court did not violate appellant's due process rights.

### I.

After a plea of guilty, appellant was convicted of one count of receiving embezzled property in violation of D.C.Code § 22–1204 (1981).[2] The sentencing hearing was set for September 2, 1986.

On August 30, 1986, one business day before the sentencing hearing, the government filed a memorandum in aid of sentencing. During the hearing, appellant moved the district court for permission "to present testimony to rebut" the sentencing memorandum.[3] Transcript of Sept. 2, 1986 Hearing ("9/2/86 Tr.") at 3. The district court denied the oral motion. *Id.* at 22–23.

After hearing testimony from appellant, and from several witnesses who appeared on behalf of appellant, the district court

---

1. The double jeopardy clause of the fifth amendment to the Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."

2. A person convicted of the offense of receipt of embezzled property in violation of § 22–1204 is subject to imprisonment for not more than 20 years and a fine of not more than twice the value of the embezzled property. D.C.Code § 22–1201 (1981).

3. The colloquy proceeded as follows:

   MR. ROBINSON [Appellant's Counsel]: ... Bill Finebloom, ... with Mr. Fogel over the weekend went through page by page of [the government's] 66–page memorandum in aid of sentencing and is prepared to testify as to facts that are known, either to Mr. Finebloom, or facts that are taken from transcripts provided by the government through pretrial discovery to show—
   THE COURT: We're not getting into that. I might point out that [the government's] memorandum in aid of sentencing consisted of between 45 to 50 pages of tape transcripts.

   MR. ROBINSON: Yes, but it is our contention, your honor, that unless given an opportunity to present testimony to rebut what is in that memorandum, then the defendant would not be prepared to proceed to sentencing because we feel that that memorandum standing on its own without a chance to provide testimony to rebut it gives an impression to the court that would prejudice Mr. Fogel beyond repair prior to sentencing.
   THE COURT: Our position with respect to this case hasn't been affected one way, or the other by the government's allocution. We had a pretty good idea of this case long, long ago.
   MR. ROBINSON: Well, is the court not going to consider the memorandum and proceed—
   THE COURT: I am aware that he had filed it and I've paid very little attention to it. I paid attention particularly to the numerous letters you sent, some of whom are from lawyers, but most of whom are from old friends of Mr. Fogel, people that have known him for 25, 30 years. Those are the things that I've paid attention to.
   Transcript of Sept. 2, 1986 Hearing at 3–4.

sentenced appellant. The district court described the sentence as follows:

We are not going to give you probation, but we are going to give you an alternative to probation. It is the judgment of this court that in lieu of incarceration at a federal institution, you are sentenced to twelve-months house arrest at your house.... This means that you will be confined to your house and grounds, except for (1) visits to your doctor; and (2) calls to the Synagogue. During these twelve months, you will be under the direction and supervision of a probation officer who will monitor your every movement by surveillance, daily phone checks, and frequent unscheduled home visits.

Violations of this order will result in your being returned to court and possibly subject to imprisonment. There may be some other conditions that may be imposed after you and the probation officer discuss this matter so that we can take care of the situations that we don't anticipate at the moment.

But that is the framework; twelve months of house arrest, subject to surveillance. The second condition is a $5 thousand-fine, which is the maximum under the statute.

The third is $350 restitution ...; and fourth, and finally, we gather from the probation report that you have agreed to your disbarment by consent.

9/2/86 Tr. at 59–60.

Following the sentencing hearing, the district court signed a "Judgment and Probation Order" which provided:

In lieu of incarceration at a Federal Institution, the defendant is hereby sentenced to a period of TWELVE (12) MONTHS under the provisions of *Residential Intensive Probation* under the direction and supervision of the Probation Officer of this Court, who will monitor the defendant by surveillance, daily phone calls and frequent unscheduled home visits, and with the following Special Conditions: 1) the defendant be allowed visits to his doctor, 2) defendant is allowed to attend the Synagogue One (1) Day a week, 3) defendant shall pay a Fine of Five Thousand Dollars ($5,000.00), to be paid within 30–days, 4) defendant to make Restitution in the amount of Three Hundred Fifty Dollars ($350.00) to W. Bell and Company, to be paid within 30–days, and 5) defendant agrees to Disbarment by Consent, to be complied within 30–days.

After the September 2 hearing, appellant reported to the Probation Office and signed a statement agreeing to the terms and conditions of probation.[4] On September 9, 1986, appellant met with his parole officer and submitted a check for the full amount of the fine imposed by the district court. On September 10, 1986, however, appellant was notified by the court that his sentence would be changed and that a resentencing hearing had been set for September 11, 1986.

At the hearing of September 11, 1986, the district court judge stated only that he "found that [he] made a mistake in the original sentence" and then vacated the original sentence. Transcript of Sept. 11, 1986 Hearing ("9/11/86 Tr.") at 1. The court then sentenced appellant to a total of three to nine years imprisonment, suspended execution of the sentence, and placed appellant on three years probation with twelve months to be served under the RIP program. Appellant was again ordered to pay a $5,000 fine and $350 in restitution and again consented to disbarment. *Id.* at 1–2. Appellant's counsel argued that the district court's increase in appellant's sentence might be illegal, and that if the sentence was technically improper because "it had to have probation tied to it, then it

---

**4.** Appellant also executed a form entitled "Residential Intensive Probation" ("RIP") which provides in relevant part:

A finding of guilty having been entered against you, the United States District Court Judge has the power to impose a prison sentence. Instead of a period of confinement in a federal prison, the Court has directed that the prison sentence shall be suspended and in its place you shall be restricted to your residence.... Failure to abide by these regulations will result in the imposition of the suspended jail sentence.

Appendix, Sec. 6, Exh. A2.

might be correctible," *id.* at 7. The court replied: "That's what I was advised and that it was an illegal sentence for that reason." *Id.* The foregoing is the only explanation in the record for the district court's actions. This appeal followed.

## II.

The government has raised two arguments in opposition to appellant's claim that the double jeopardy clause bars an increase in his original sentence. First, the government argues that because the appellant's original sentence was void and of no legal effect, the second sentence could not "increase" the original sentence. Alternatively, the government argues that, even if appellant's first sentence was valid, the double jeopardy clause does not bar an increase in that sentence. We address first the contention that the original sentence was void and of no legal effect.

▆ The government argues that appellant's original sentence is ambiguous but void under either of the two possible constructions. First, if the district court intended to place the appellant on probation, then the sentence is in violation of 18 U.S.C. § 3651 (1982)[5] because the court did not "suspend the imposition or execution of sentence."[6] Alternatively, if the district court intended the twelve months of house arrest to be a term of imprisonment, then the sentence is in violation of 18 U.S.C. § 4082(a) (1982)[7] because only the Attorney General has the authority to "designate the place of confinement where the sentence shall be served."

The government leans to the view that the district court sentenced appellant to a prison term and designated the place of confinement in violation of section 4082(a). Several bits of evidence are cited for this conclusion. First, the Judgment and Probation Order does not state that the court is suspending the imposition or execution of sentence. Instead, the Order states that "the defendant is hereby sentenced." Second, the Order provides that the twelve months of house arrest is "[i]n lieu of incarceration at a Federal Institution."

The government finds additional support in the district court's oral explanations of the two sentences. At the original sentencing hearing, the district court expressly stated: "We are not going to give you probation, but we are going to give you an alternative to probation. It is the judgment of this court that in lieu of incarceration at a federal institution, you are sentenced to twelve-months house arrest at your house." 9/2/86 Tr. at 59. Further, the district court in explaining its actions on resentencing appeared to believe that the original sentence was illegal because it did not have "probation tied to it." 9/11/86 Tr. at 7.

▆ The appellant challenges the government's characterization of the origi-

---

**5.** 18 U.S.C. § 3651 (1982) provides:

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

**6.** When a district court suspends "execution" of a sentence, the court states definite terms of the sentence but then declares those terms to be suspended. Upon revocation of probation, the defendant cannot legally receive a sentence which is higher than the one which was suspended. When the district court suspends the "imposition" of a sentence, the court does not state the terms of the sentence. Upon revocation of probation, the court may impose any

sentence it originally could have imposed. *See Roberts v. United States,* 320 U.S. 264, 272–73, 64 S.Ct. 113, 117–18, 88 L.Ed. 41 (1943) ("having exercised its discretion by sentencing an offender to a definite term of imprisonment in advance of probation, a court may not later upon revocation of probation set aside that sentence and *increase the term of imprisonment*"); *United States v. Bynoe,* 562 F.2d 126, 129 (1st Cir. 1977).

**7.** 18 U.S.C. § 4082(a) (1982) provides:

A person convicted of an offense against the United States shall be committed, for such term of imprisonment as the court may direct, to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served.

nal sentence as intended to define a term of confinement and argues that the only problem with the original sentence is semantic: the district court intended to place the appellant on probation pursuant to section 3651 but simply failed to state that it was suspending the imposition or execution of sentence. We think this view correct. "Residential Intensive Probation" is exactly what it says it is—a form of probation. The district court placed the defendant "under the direction and supervision of a probation officer." When appellant reported to the probation officer, he executed a form entitled "Conditions of Probation." He also executed another form entitled "Residential Intensive Probation: A Special Condition of Probation." This form provided that "[i]nstead of a period of confinement in a federal prison, the Court has directed that the prison sentence shall be suspended" and that failure to abide by the RIP regulations "will result in the imposition of the suspended jail sentence." The district court also stated that the fine, the restitution, and the consent to disbarment were conditions of probation.

Further, there is no evidence that the court was attempting to impose a prison sentence and to specify the place of confinement. The district court specifically stated to appellant that violations of the Order "will result in your being returned to court *and possibly subject to imprisonment.*" 9/2/86 Tr. at 60 (emphasis added). The only evidence which even arguably supports the goverment's position is the court's statement that "[w]e are not going to give you probation, but we are going to give you an alternative to probation." This statement, however, in light of the evidence cited above, can best be understood to mean that appellant was not receiving the traditional type of probation. This evidence clearly shows that the district court intended the twelve months of house arrest to be a period of probation and not of confinement.

■ Though the original sentence may have been ambiguous, there is no support for the proposition that it was void. The original sentence is defective only because the court did not state that it was suspending the imposition or execution of sentence. But this defect does not render the entire original sentence void. That sentence was partially illegal and could have been corrected pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure [8] by either adding the statement that imposition of sentence was being suspended or by setting the terms of the sentence and suspending execution. A partially defective sentence is not void in its entirety. *See United States v. Pridgeon,* 153 U.S. 48, 62, 14 S.Ct. 746, 751, 38 L.Ed. 631 (1894) ("[T]he sound rule is that a sentence is legal so far as it is within the provisions of law and the jurisdiction of the court over the person and offence, and only void as to the excess when such excess is separable, and may be dealt with without disturbing the valid portion of the sentence."); *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 174, 21 L.Ed. 872 (1873) ("The judgment first rendered, though erroneous, was not absolutely void. It was rendered by a court which had jurisdiction of the party and of the offence, on a valid verdict."); *Rousan v. United States,* 668 F.2d 1006 (8th Cir.1982) (court's sentence of imprisonment and special parole term is not void even though special parole term is not authorized by statute). *Cf. United States v. DeLeo,* 644 F.2d 300, 302 (3d Cir.1981) ("fairness demands that the district court's authority to 'correct' [under Rule 35] be limited to correction of the illegality"); *Pugliese v. United States,* 353 F.2d 514, 516 (1st Cir.1965) ("The illegality [under Rule 35] could not exceed what needs to be corrected.").

The cases and theories relied on by the government are not on point. First, the government argues that the original sentence was void because "[n]umerous decisions have held that unless an order suspending sentence under § 3651 specifies a definite term of probation, it is void."

**8.** Rule 35 (a) provides that "[t]he court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence."

Brief for Appellee at 4. In each of the cases cited, however, the court suspended the imposition or execution of sentence but failed to specify any term of probation. The sentence in each case was found void because absent a term of probation it was a permanent suspension of sentence and could not be a final judgment. *See United States v. Elkin*, 731 F.2d 1005, 1010 (2d Cir.); *cert. denied*, 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984); *United States v. Ellenbogen*, 390 F.2d 537, 541 (2d Cir.), *cert. denied*, 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968); *United States v. Sams*, 340 F.2d 1014, 1020 (3d Cir.), *cert. denied*, 380 U.S. 974, 85 S.Ct. 1336, 14 L.Ed.2d 270 (1965); *United States v. Graham*, 325 F.2d 922, 925 (6th Cir.1963); *United States v. Robinson*, 344 F.Supp. 956 (D.Del.), *aff'd*, 474 F.2d 1337 (3d Cir.1972); *see also Miller v. Aderhold*, 288 U.S. 206, 210–11, 53 S.Ct. 325, 326, 77 L.Ed. 702 (1933) ("In a criminal case final judgment means sentence; and a void order purporting permanently to suspend sentence is neither final nor a valid judgment."). In this case, the court did not suspend the imposition or the execution of sentence for an indefinite period. Instead the court suspended sentence and ordered the defendant to serve a definite, final term of probation. Thus, these cases are not relevant.

Nor is this a case where the district court entered a sentence which was not authorized by the penalty statute and an increase in the sentence was necessary to comply with the statute. *See Burns v. United States*, 552 F.2d 828, 831 (8th Cir. 1977) ("When the first sentence does not conform to the applicable penalty statute [because the statute does not authorize the court to set a fixed maximum,] ... it is a nullity, and, as such, may be corrected ... so as to comply with the statute, even though service of the sentence originally

imposed has begun and the correct sentence is regarded to be more onerous."); *Hayes v. United States*, 249 F.2d 516, 517–18 (D.C.Cir.1957), *cert. denied*, 356 U.S. 914, 78 S.Ct. 672, 2 L.Ed.2d 586 (1958) ("a sentence which does not conform with the applicable statute [because it is below the statutory minimum] may be corrected though defendant ... has begun to serve it"). In this case, the original sentence was within the maximum and minimum sentences authorized by the penalty statute and the term of probation is authorized by section 3651. Thus, the sentence was not void under this theory.

### III.

Because the original sentence was not void, we must address appellant's double jeopardy claim. Thus, the issue presented is whether the double jeopardy clause prohibits a district court from increasing a defendant's sentence after service has begun when an increase in the sentence is not necessary to cure a defect in the original sentence.[9]

Relying on the Supreme Court's decision in *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the government argues that the increase in appellant's sentence does not violate the double jeopardy clause because appellant had no legitimate expectation of finality in the original sentence. We disagree. Because the decision in *DiFrancesco* can be understood only in light of the Supreme Court's prior treatment of the relationship between the double jeopardy clause and sentencing, we begin with a brief review of the Court's decisions in this area.

Prior to *DiFrancesco*, *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1873), was the leading case on the question of whether an increase in a sentence for

---

**9.** The government argues that appellant had not begun service of his sentence at the time of the second hearing because that hearing was held on September 11 and the RIP was not to begin until September 12. The government fails to recognize, however, that RIP is merely one of several conditions that the court attached to the probation. The appellant clearly had begun serving his sentence at the time of the second

sentencing hearing because prior to that hearing he had paid the fine, reported to a probation officer, and executed the terms of his probation. *See United States v. Jones*, 722 F.2d 632, 635–36 (11th Cir.1983) (defendant had begun to serve sentence when he reported to probation officer and followed conditions set out by district court).

which service had begun violated the double jeopardy clause. The defendant there was sentenced to one year in prison *and* a two hundred dollar fine for a crime punishable by "imprisonment for not more than one year *or* a fine of not less than ten dollars nor more than two hundred dollars." 85 U.S. (18 Wall.) at 164. After the defendant paid the fine, he filed a petition for a writ of habeas corpus, arguing that the original sentence was in excess of the court's powers. The lower court then vacated the original sentence and sentenced the defendant to one year of imprisonment. The second sentence was to commence on the date of its imposition.

The Supreme Court reversed on the ground that the second sentence violated the double jeopardy clause:

> The petitioner, then, having paid into court the fine imposed upon him of two hundred dollars, and that money having passed into the Treasury of the United States, and beyond the legal control of the court, or any one else but the Congress of the United States, and he having also undergone five days of the one year's imprisonment, all under a valid judgment, can the court vacate that judgment entirely, and without reference to what has been done under it, impose another punishment on the prisoner on that same verdict? To do so is to punish him *twice* for the same offence. He is not only put in jeopardy twice, but put to actual punishment twice for the same thing.

85 U.S. (18 Wall.) at 175.

The Court later held that a judge has the power to decrease a sentence during the term in which it was imposed even though the defendant has begun to serve it. *United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931). The Court distinguished *Ex parte Lange* by noting that "[i]n the present case the power of the court was exercised to mitigate the punishment, not to increase it" and went on to state that "[a]s a general practice, the sentence, when imposed by a court of record, is within the power of the court during the session in which it is entered, and may be amended at any time during such session, provided a punishment already partly suffered be not increased." *Id.* (internal quotation omitted). Following the Court's statement in *Benz,* lower courts uniformly held that *Ex parte Lange* prohibited an increase in a sentence after the defendant had begun to serve it. *See e.g., United States v. Davidson*, 597 F.2d 230 (10th Cir.), *cert. denied*, 444 U.S. 861, 100 S.Ct. 127, 62 L.Ed.2d 83 (1979); *United States v. Di Lorenzo*, 429 F.2d 216 (2d Cir.1970), *cert. denied*, 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971); *Williams v. United States*, 422 F.2d 1318 (5th Cir.1970); *Vincent v. United States*, 337 F.2d 891 (8th Cir.1964), *cert. denied*, 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281 (1965); *Rowley v. Welch*, 114 F.2d 499, 501 n. 3 (D.C.Cir. 1940).

In *Bozza v. United States*, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947), the Court faced the converse of the *Ex parte Lange* situation. The defendant was originally sentenced to imprisonment for an offense which carried a minimum mandatory sentence of imprisonment *and* a fine. *Id.* at 165, 67 S.Ct. at 648. Five hours later, while the defendant was in a local federal detention jail awaiting transportation to a federal penitentiary, the trial judge recalled the defendant and added a fine to the original sentence.

The Court held that the second sentence was valid, even though it increased the original sentence, because

> [i]n this case the court "only set aside what it had no authority to do and substitute[d] directions required by the law to be done upon the conviction of the offender".... It did not twice put petitioner in jeopardy for the same offense. The sentence, as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense.

*Bozza* at 330 U.S. 166, 67 S.Ct. 645 (quoting *In re Bonner*, 151 U.S. 242, 260, 14 S.Ct. 323, 327, 38 L.Ed. 149 (1894)). The Court distinguished *Ex parte Lange* on the ground that by paying the fine, the defendant had fully executed one of the alterna-

tive penalties under the statute and thus had fully served a valid sentence. In that situation the court "could not correct the sentence without causing him to suffer double punishment." 330 U.S. at 167 n. 2, 67 S.Ct. at 649 n. 2.

In a related line of cases, the Court has also held that double jeopardy does not bar an increase in sentence following a retrial and reconviction for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919). This conclusion "rests ultimately upon the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." *Pearce*, 395 U.S. at 721, 89 S.Ct. at 2078.

The Court in *DiFrancesco* upheld a statutory provision which allows the government to appeal a sentence imposed upon a "dangerous special offender," 18 U.S.C. § 3576 (1982), and held that neither a government appeal of the sentence nor an increase of the sentence on appeal violates the double jeopardy clause.

In *DiFrancesco*, the defendant was convicted of federal racketeering offenses and sentenced as a dangerous special offender to two ten-year prison terms, to be served concurrently with each other and with a nine-year sentence imposed in an unrelated trial. On appeal pursuant to section 3576, the government argued that the district court erred by in effect sentencing the defendant to only one additional year of imprisonment on the dangerous special offender charge. The court of appeals dismissed the appeal on double jeopardy grounds. *United States v. DiFrancesco*, 604 F.2d 769 (2d Cir.1979).

The Supreme Court held that the appeal of the sentence did not violate the prohibition of the double jeopardy clause against multiple trials and that the increase of the sentence on appeal would not violate the prohibition against multiple punishment. The Court began its analysis of sentencing by noting that under the common law, whose principles influenced the drafting of the double jeopardy clause, "[t]he trial court's increase of a sentence, so long as it took place during the same term of court, was permitted." 449 U.S. at 133–34, 101 S.Ct. at 435. This, the Court explained, "accounts for the established practice in the federal courts that the sentencing judge may recall the defendant and increase his sentence, at least (and we venture no comment as to this limitation) so long as he has not yet begun to serve that sentence." *Id.* at 134, 101 S.Ct. at 436. The Court thus specifically declined to address the issue presented in this case.

The Court did, however, analyze, the relationship between double jeopardy and sentencing. Relying on *Bozza* and *Pearce*, the Court stated generally "that a sentence does not have the qualities of constitutional finality that attend an acquittal." 449 U.S. at 134, 101 S.Ct. at 436. The Court also noted that there is "no double jeopardy protection against revocation of probation and the imposition of imprisonment," and thus concluded that a defendant does not have "the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *Id.* at 137, 101 S.Ct. at 437. Applying these principles to the case before it, the Court held:

> While these criminal sanctions do not involve the increase of a final sentence, and while the defendant is aware at the original sentencing that a term of imprisonment later may be imposed, the situation before us is different in no critical respect. Respondent was similarly aware that a dangerous special offender sentence is subject to increase on appeal. His legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked.

*Id.*

The Court then addressed the question of whether the increase of the sentence pursuant to the special offender provision violated the prohibition against multiple punishment. The Court restricted *Benz* and *Ex parte Lange* to their "specific context." 449 U.S. at 139, 101 S.Ct. at 438. The Court rejected the statement in *Benz* which

provides that a court cannot increase a sentence after service has begun by holding that "the dictum's source, *Ex parte Lange*, states no such principle." *Id.* at 138, 101 S.Ct. at 438. Instead, because the defendant in *Ex parte Lange* had already paid the alternative penalty of a fine, and had served five days of imprisonment, the second sentence of one year of imprisonment—a maximum alternative penalty under the statute—served to punish the defendant twice for the same offense. *Id.* at 138–39, 101 S.Ct. at 438–39. Thus, the Court held, *"Ex parte Lange* demonstrates [that] a defendant may not receive a greater sentence than the legislature has authorized." *Id.* at 139, 101 S.Ct. at 438. Employing this interpretation of *Ex parte Lange,* the Court concluded that the increase of a sentence pursuant to the special offender provision did not subject the defendant to multiple punishment because the increase had been specifically authorized by Congress. *Id.* The Court noted, however, in a passage critical to the case before us, that:

[a]lthough it might be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it, and that the trial judge should be prohibited from thereafter increasing the sentence, that argument has no force where, as in the dangerous special offender statute, Congress has specifically provided that the sentence is subject to appeal.

*Id.*

Though the Court in *DiFrancesco* addressed a very different issue than the one before us, and in fact expressly declined to address the issue of whether a court may increase a sentence after service has begun, the Court did set out governing principles for cases such as this one. We believe that these principles are as follows: [10]

■ First, it is clear after the Court's discussion of *Ex parte Lange* and *Benz,* that there no longer exists a *per se* rule that prohibits a court from increasing a defendant's sentence after service has begun. Instead, the holdings in *Ex parte Lange* and *Benz* now mean only that a

---

**10.** The Court's decision in *DiFrancesco* has received varied and conflicting interpretations. Three members of the Supreme Court have subsequently reaffirmed the principle " 'that the court during the same term may amend a sentence so as to mitigate the punishment, but not so as to increase it,' " and apparently would limit the holding of *DiFrancesco* "to the situation in which *Congress* has expressly authorized an increase of sentence after the initial sentence has been set aside on *direct appeal." Ralston v. Robinson,* 454 U.S. 201, 223–24 & n. 3, 102 S.Ct. 233, 247 & n. 3, 70 L.Ed.2d 345 (1981) (Stevens, J., dissenting) (emphasis in original) (quoting *United States v. Benz,* 282 U.S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931)).

Most courts have interpreted *DiFrancesco* as holding that the double jeopardy clause protects a defendant's legitimate expectation of finality in the length of his sentence. *See United States v. Earley,* 816 F.2d 1428, 1433 (10th Cir.1987) (en banc); *United States v. Andersson,* 813 F.2d 1450, 1461 (9th Cir.1987); *United States v. Bishop,* 774 F.2d 771, 775 (7th Cir.1985); *United States v. Bello,* 767 F.2d 1065 (4th Cir.1985); *United States v. Jones,* 722 F.2d 632 (11th Cir. 1983). Several courts have concluded that *DiFrancesco* eliminated, or severely limited, the protection of the double jeopardy clause on resentencing. *See McClain v. United States,* 676 F.2d 915 (2d Cir.), *cert. denied,* 459 U.S. 879, 103

S.Ct. 174, 74 L.Ed.2d 143 (1982); *United States v. Busic,* 639 F.2d 940 (3d Cir.1981), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981).

A plurality of the judges sitting on the Fifth Circuit found that *DiFrancesco* did not affect traditional analysis because when Rule 35 was adopted it was intended to incorporate existing law. Because *Ex parte Lange* was decided before Rule 35 was adopted, and *DiFrancesco* was not, the plurality felt "constrained to follow *Ex parte Lange*—as it was generally understood before the Court's ruling in *DiFrancesco*—in every Rule 35 case." *United States v. Henry,* 709 F.2d 298, 310 (5th Cir.1983) (en banc). Subsequently, a panel of the same court expressly refused to follow this reasoning. *United States v. Crawford,* 769 F.2d 253, 257–58 (5th Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986).

On panel of the Fourth Circuit (without reference to the court's earlier decision in *Bello, see supra* ) has held that the *DiFrancesco* Court's discussion of finality was premised upon the due process clause and not upon the double jeopardy clause. *United States v. Lundien,* 769 F.2d 981, 986 (4th Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986). *See also Breest v. Helgemoe,* 579 F.2d 95, 101 (1st Cir.), *cert. denied,* 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978) (pre-*DiFrancesco* case applying due process analysis to resentencing).

court which imposes a sentence greater than that authorized by the legislature subjects a defendant to multiple punishment in violation of the double jeopardy clause.

■ The second principle which we derive from the opinion is that the application of the double jeopardy clause to an increase in a sentence turns on the extent and legitimacy of a defendant's expectation of finality in that sentence. If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause. If, however, there is some circumstance which undermines the legitimacy of that expectation, then a court may permissibly increase the sentence.

This second principle can be gleaned from several parts of the *DiFrancesco* opinion. First, the Court noted that "[a]n acquittal is accorded special weight.... [which] unequivocally prohibits a second trial," 449 U.S. at 129, 101 S.Ct. at 433, and then held that "the pronouncement of sentence has never carried the finality that attaches to an acquittal." *Id.* at 133, 101 S.Ct. at 435. Significantly, the Court did not state that no finality attaches to a sentence. We think the Court must be understood to have meant that a sentence does not have the same degree of finality that an acquittal does. Thus, a defendant has some lesser expectation of finality in the severity of a sentence.

■ Similarly, in stating that the possibility of the revocation of probation shows that "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be," the Court specifically noted that the defendant is aware at sentencing that probation may be revoked. 449 U.S. at 137, 101 S.Ct. at 437. The Court found the statute about sentences for dangerous special offenders to be similar in this regard because the defendant is aware at sentencing that his sentence may be increased under that statute on appeal: the defendant's "legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked." *Id.* We think this discussion must be interpreted to mean that a defendant has a legitimate expectation in the finality of a sentence unless he is or should be aware at sentencing that the sentence may permissibly be increased. If the Court in *DiFrancesco* had meant to hold that a defendant has no interest in the finality of his sentence, under any circumstances, then the Court's discussion of the defendant's awareness of the potential increase in the sentence would have been unnecessary.

■ Third, the Court in *DiFrancesco* left undisturbed the principle announced in *Bozza* that a court may permissibly increase a sentence if necessary to comply with a statute, 449 U.S. at 134–35, 101 S.Ct. at 436, and reaffirmed the principle, as announced in *Pearce*, that there is no "absolute constitutional bar to the imposition of a more severe sentence on reconviction after the defendant's successful appeal of the original judgment of conviction." *Id.* at 135, 101 S.Ct. at 436. The Court's treatment of these cases is fully consistent with our interpretation of *DiFrancesco* as permitting a finding that a defendant's legitimate expectation of finality in a sentence is protected by the double jeopardy clause. In each case there was some circumstance which undermined the defendant's expectation of finality. In *Bozza*, the defendant had no legitimate expectation of finality because the sentence could not lawfully exist unless the court increased it. In *Pearce,* the defendant defeated the expectation of finality by appealing his conviction.

Our interpretation is also consistent with the Supreme Court's subsequent interpretation of *DiFrancesco*. In *Pennsylvania v. Goldhammer,* 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985), the Court summarily reversed a decision in which the Supreme Court of Pennsylvania held that the double jeopardy clause prohibited resentencing on counts which were affirmed on appeal after a sentence on another count had been vacated. The Court found that the decision on review was inconsistent with the ratio-

nale of *DiFrancesco*, which the Court determined is " 'that a sentenc[ing in a noncapital case] does not have the qualities of constitutional finality that attend an acquittal.' " *Id.* 106 S.Ct. at 353–54 (*quoting DiFrancesco*, 449 U.S. at 134, 101 S.Ct. at 436). Significantly, the Court did not merely reverse the lower court's decision on the basis of that rationale. The Court went on to instruct the court on remand to address the issue in *DiFrancesco* which is critical to this appeal:

> In *DiFrancesco* a federal statute clearly allowed the appellate review of the sentences at issue. The Court noted that, in light of that statute, the defendant could not claim any expectation of finality in his original sentencing.... We reverse and remand ... for a determination of that issue [on the facts of this case], and for further reconsideration of this case in light of *DiFrancesco*.

*Id.* 106 S.Ct. at 354. Justice Stevens in dissent argued that *DiFrancesco* did not apply to the case because no statute authorized government appeals of sentences at the time of the defendant's sentencing. The fact that both the majority and the dissent thought the question of whether the government could appeal crucial to the double jeopardy analysis shows that, in the absence of such a factor, the defendant has an interest in the finality of his original sentence.

We also believe that our analysis here is fully consistent with the purposes of the double jeopardy clause. The primary purpose of the clause is to protect the finality of judgments. *United States v. Scott*, 437 U.S. 82, 92, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978); *Crist v. Bretz*, 437 U.S. 28, 33, 98 S.Ct. 2156, 2159, 57 L.Ed.2d 24 (1978). One of the interests protected by constitutional finality is that of the defendant to be free from being compelled to "live in a continuing state of anxiety and insecurity." *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). The clause applies to "multiple punishment" because, if it did not apply to punishment, then the prohibition against "multiple trials" would be meaningless; a court could achieve the same result as a second

trial by simply resentencing a defendant after he has served all or part of an initial sentence. *See Ex parte Lange*, 85 U.S. (18 Wall.) at 175. Similarly, if a court can increase a defendant's sentence after service has begun, for any reason, or for no reason at all, then the interest in protecting a defendant from being compelled to live in a continuing state of anxiety is lost. This anxiety would seem to be the same as, or akin to, that which would follow from the knowledge that a defendant can be tried again. In each case the underlying fear is that the defendant will receive punishment in addition to that which he had already received. *See Ex parte Lange*, 85 U.S. (18 Wall.) at 173 ("It is the punishment that would legally follow the second conviction which is the real danger guarded against."). It would seem to follow that a defendant has, barring any awareness to the contrary, an expectation of finality in the severity of a sentence that is protected by the double jeopardy clause.

■ Thus, the issue before us is whether the appellant in this case had a legitimate expectation of finality in the severity of the sentence originally imposed by the district court. We think he did and that there is no circumstance in this case that would defeat that expectation.

First, an increase in appellant's term of probation was not necessary to bring the sentence into compliance with any statute. The originally imposed sentence was not impermissible under the penalty statute, *see* D.C.Code § 22–1201 (1981). Compliance with section 3651 also did not require an increase in the defendant's sentence. The district court could have corrected the sentence by simply stating that it was suspending imposition or execution of the sentence. Nor do the statutes relevant to appellant's sentence give any indication that the sentence could be increased by the court. Of course, the appellant was aware that he could receive a greater sentence upon revocation of probation, but this is irrelevant because the appellant's probation was not revoked.

The increase in the original sentence is also not predicated on any action taken by the appellant. The appellant did not appeal his conviction. Nor did he challenge the original sentence. To the contrary, the appellant proceeded to serve the sentence as if it were final in all respects. The appellant paid the fine in full, reported to a probation officer, and executed the terms and conditions of his probation. Appellant had no reason to believe that the district court could, on its own motion and without explanation, increase the length of his sentence.

The government presents only one argument with respect to this issue:

> The instant case ... involves action by the trial court to correct what it perceived to be an erroneous sentence because of the lack of certainty that the sentence was one that the court had authority to impose. A defendant acquires, at the moment he begins service of his sentence, no expectation of finality in a sentence whose ambiguity threatens to involve the district court improperly in the function of the Attorney General to designate the place of confinement. House arrest is a novel and hybrid enough concept (combining elements of incarceration and probation) that it inevitably invites reconsideration unless the sentence makes explicit that the confinement is part of a regime of probation and is not a surrogate for incarceration.

Brief for Appellee at 10–11. First, we believe that this argument rests on a view of the facts much more complicated than those actually present here. As we stated earlier, the district court clearly suspended sentence and placed the appellant on probation. The only defect in the sentence is that the district court failed to state that it was suspending sentence.

Second, we do not agree with the theory advanced by the government in this argument. That theory, as we understand it, is that a defendant cannot have any expectation of finality in the length of a defective sentence, whether or not the defect is related to the length of the sentence. We think, to the contrary, that after a defendant is sentenced, he is entitled to have a legitimate expectation that the district court has reviewed all of the relevant circumstances, and has finally determined the severity of the punishment that should be imposed on the defendant. A later discovery that the sentence is technically defective, for reasons unrelated to the length of the sentence, is not relevant to, and does not affect, that expectation.[11] It follows that an increase in a sentence for an unrelated technical defect frustrates a defendant's legitimately held expectation in the severity of his sentence and violates the double jeopardy clause. Any other holding would place form above substance and would be inconsistent with the proper focus of the prohibition against double jeopardy. The purpose of the double jeopardy clause is to protect the defendant against multiple trials and punishment. It is not intended to be a requirement that all

---

11. Our holding here is not inconsistent with the Fifth Circuit's decision in *United States v. Crawford.* In that case, the district court granted the government's Rule 35 motion and increased the defendants' sentences upon a finding that the original sentences were imposed in an illegal manner. This finding was based on evidence that the government had been denied its right to allocution at the sentencing hearing. On appeal, the court held that the resentencing did not violate the defendants' double jeopardy rights because a "[d]efendant is charged with knowledge that his sentence, if illegally imposed, is subject to correction under Fed.R. Crim.P. 35(a) ... [and] [u]nder such circumstances ... has no expectation of finality in the sentence he receives." 769 F.2d at 257. The distinction between *Crawford* and the case before us is that the illegality in *Crawford* affected the entire sentence, including its severity; because the court denied the government its right to allocution, the court decided the appropriate punishment on the basis of incomplete information. Thus, the defendant could have no expectation of finality in the severity of his sentence. *See also McClain,* 676 F.2d at 918 (holding that double jeopardy does not prohibit resentencing on unchallenged count after appeal of defendant on another count and vacatur of entire sentence but explicitly noting that "what we have said ... in no way is addressed to a situation involving concurrent or non-interlocking sentences"). In this case, the defect in the sentence is unrelated to the severity of the sentence imposed. Thus, the appellant's expectation of finality in the severity of the sentence was unaffected by the defect and remained wholly legitimate.

sentences be technically correct in every aspect or else be subject to revision upward.

■ The district court in this case was free to correct the defect in the original sentence but only to the extent necessary to bring the sentence into compliance with the statute. Because the district court unnecessarily increased the appellant's sentence, thus producing a violation of the double jeopardy clause, we vacate the sentence imposed on resentencing and remand. On remand, the district court is directed to reinstate the original sentence with any modifications necessary and consistent with this opinion.

### IV.

We do not find that the district court violated appellant's due process rights by refusing to allow appellant to rebut the government's memorandum in aid of sentencing through the testimony of a witness. The district court's actions during the sentencing hearing were proper in all respects.

■ Under Rule 32 of the Federal Rules of Criminal Procedure, the district court must "afford counsel an opportunity to speak on behalf of the defendant; and ... address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment," Fed. R.Crim.P. 32(a)(1)(B) & (C), before imposing sentence. A defendant also has a constitutional right not to be sentenced on the basis of invalid information, *see United States v. Tucker*, 404 U.S. 443, 447–48, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972); *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948), and, therefore, must be given an opportunity to rebut any challenged information. *United States v. Collins Spencer Catch the Bear*, 727 F.2d 759, 761 (8th Cir.1984); *United States v. Aguero-Segovia*, 622 F.2d 131, 132 (5th Cir. 1980).

■ To prove a due process violation, however, the defendant must show that the challenged information "is (1) false or unreliable, and (2) demonstrably made the basis for the sentence." *United States v. Ibarra*, 737 F.2d 825, 827 (9th Cir.1984); *see also United States v. Tooker*, 747 F.2d 975, 978–80 (5th Cir.1984), *cert. denied*, 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985) (defendant has burden of showing that information is inaccurate and that court explicitly relied upon it); *United States ex rel. Welch v. Lane*, 738 F.2d 863, 865 (7th Cir.1984) (same). The appellant has failed to show that the district court violated his due process rights by refusing to allow him to rebut challenged information or by sentencing him on the basis of invalid information.

First, the district court did not abuse its discretion in refusing to allow appellant to present testimony to rebut the memorandum. Though a defendant has a right to rebut invalid information, "he does not have the right to have others testify for him at a sentencing." *United States v. Heller*, 797 F.2d 41, 43 (1st Cir.1986). *Accord United States v. Jackson*, 700 F.2d 181, 191 (5th Cir.), *cert. denied*, 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983). At the sentencing hearing, the court afforded appellant and his counsel an opportunity to testify and the appellant did testify at great length. This is all that appellant was entitled to under the law.

Second, the appellant failed to show that any information was inaccurate. In fact, appellant failed to identify any information which he believed to be inaccurate. After the court refused appellant's request to provide witness testimony, neither appellant nor his counsel addressed the issue again. Under these circumstances, the district court clearly was not required to take any further action. *See United States v. Petty*, 798 F.2d 1157, 1162 (8th Cir.1986) (court is not required to conduct further investigation in response to vague statement of defendant which failed to allege any specific inaccuracies).

Finally, the appellant has failed to provide any evidence that the district court explicitly relied upon invalid information. To the contrary, the record shows that the district court did not rely on any information in the sentencing memorandum: the

court explicitly stated that it "had paid very little attention" to the memorandum and had instead relied primarily upon the character references submitted by the appellant. 9/2/86 Tr. at 4. Thus the appellant has failed to make any showing to support a due process violation.

Though we do not find that the government's failure to file the sentencing memorandum in a timely manner rises to the level of a due process violation, we do wish to state our disapproval of the government's actions. Due process and fairness require that a defendant be afforded a meaningful opportunity to rebut any information presented to the court for consideration on sentencing. Ordinarily, filing a memorandum one business day before the sentencing hearing will not provide the defendant with anything approximating a "meaningful opportunity" to review the information and to prepare a rebuttal. In this case, however, the appellant did not request additional time to review the memorandum. Further, we do not believe that the appellant was substantially prejudiced by the delay because 45 to 50 pages of the 66-page memorandum consisted of transcripts to which appellant previously had access. In future cases, however, the government should file any sentencing information in a timely manner. It cannot be said often enough that sentencing is a critical phase of the criminal justice process, and that "[s]entencing by ambush should be avoided even more studiously than trial by ambush." *United States v. Li,* 510 F.Supp. 276 (D.Haw.1981).

We therefore affirm the district court's denial of appellant's motion to present testimony to rebut the government's sentencing memorandum and reverse the district court's order on resentencing and remand for reconsideration.

*It is so ordered.*