**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ken SMITH, Defendant–Appellant.**

**No. 90–2029.**

United States Court of Appeals,
Tenth Circuit.

March 18, 1991.

**1454**

David Williams, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and James D. Tierney, Asst. U.S. Atty., with him, on the brief), Albuquerque, N.M., for plaintiff-appellee.

Wendy E. York, Albuquerque, N.M., for defendant-appellant.

Before McKAY, TACHA, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Ken Smith and two co-defendants, David Paul Gallegos and Albert Mirabal, were charged in the first count of a two-count indictment in the United States District Court for the District of New Mexico with conspiring from April 29, 1989, to May 18, 1989, to possess with an intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 18 U.S.C. § 2. In the second count, the three defendants were charged with the possession on May 18, 1989, of more than 100 kilograms of marijuana with an intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2.

As a result of a plea bargain, all three defendants pleaded guilty to a one-count information charging them with possession on May 15, 1989, of more than 50 kilograms of marijuana with an intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. By this appeal, Smith challenges the sentence imposed on him by the district court. By separate appeal, No. 90–2006, David Paul Gallegos has also challenged his sentence. Gallegos' appeal was decided by this Court's opinion filed on January 7, 1991, 922 F.2d 630. The third defendant, Albert Mirabal, has not appealed his sentence.

A rather detailed statement of the underlying chronology is necessary to place the various issues in focus. On May 18, 1989, Ken Smith and Albert Mirabal were arrested as they were in the process of selling 125 pounds of marijuana to undercover agents. Mirabal had been negotiating the sale for several weeks prior to May 18, 1989. Smith was Mirabal's source of supply. Shortly before the arrest, agents followed Smith to Gallegos' residence and observed Gallegos and Smith load a number of plastic bags into Smith's vehicle from a shed located within Gallegos' curtilage. Smith then drove to the scene of the purported sale, where he met with Mirabal and the undercover agents. At the time of the arrest of Mirabal and Smith, agents seized what amounted to 125 pounds of marijuana from Smith's automobile. After the arrest, the agents proceeded to Gallegos' residence where Gallegos was arrested. Armed with a search warrant, the agents searched Gallegos' shed and seized an additional 189 pounds of marijuana.

The root of the present controversy is whether only the 125 pounds of marijuana taken from Smith's automobile should be factored into the determination of Smith's base offense level, or whether the 189 pounds of marijuana seized from Gallegos' shed should also be considered. The amount of marijuana used in determining Smith's base offense level significantly affects the resulting sentencing guideline range.

The base offense level where only 125 pounds of marijuana is involved is 20. United States Sentencing Comm'n, Guidelines Manual [hereinafter referred to as Guidelines] § 2D1.1. Since, as it is agreed, Smith was entitled to a 2–point reduction for his acceptance of responsibility, his net base offense level would be 18 if only the 125 pounds of marijuana found in his automobile is factored into the determination of his base offense level. Smith had no prior criminal record, and his criminal history category was therefore I. The sentencing guideline range for a person with a base offense level of 18 and a criminal history category of I is 27 to 33 months.

However, adding the 189 pounds of marijuana taken from the shed to the 125 pounds of marijuana would raise Smith's base offense level to 26. Guidelines § 2D1.1. With the 2–point reduction, his net base offense level would become 24. The sentencing guideline range for a person with a base offense level of 24 and a criminal history category of I is 51 to 63 months.

Apparently, all three defendants were sentenced on December 15, 1989. It would appear that Mirabal was sentenced first. And it would also appear that the district court refused to follow the pre-sentence report's recommendation to factor in the 189 pounds of marijuana taken from Gallegos' shed in determining Mirabal's base offense level. As indicated, Mirabal has not appealed his sentence.

Smith was sentenced next. Smith's pre-sentence report also recommended the inclusion of the 189 pounds of marijuana taken from Gallegos' shed in determining Smith's base offense level. However, after listening to counsel's objection, the district court refused to consider the 189 pounds of marijuana in calculating Smith's base offense level. The district court then sentenced Smith to 30 months imprisonment.

Gallegos was the last to be sentenced. In his case, the district court determined to follow the pre-sentence report and considered the 189 pounds of marijuana taken from the shed in the determination of his base offense level. At this point, the district court apparently first realized that the pre-sentence report for both Gallegos and Smith indicated that the 189 pounds of marijuana taken from Gallegos' shed actually belonged to Smith and had been stored by Smith in Gallegos' shed with Gallegos' permission. The district judge spoke as follows:

"Just a moment. See if Wendy York [Smith's attorney] and Ken Smith are still around. I'm hearing some things here that affect or may relate to the sentence which I have imposed on Mr. Smith."

Neither Smith nor his attorney was around. Smith was on bond and had been

granted the right to voluntarily surrender at a later date to the authorities. Apparently, Smith and his attorney left the courthouse immediately after Smith's sentencing and before Gallegos was sentenced.

On December 22, 1989, the district court held a second hearing in connection with Smith's sentencing. Smith and his attorney were both present, as was the United States Attorney. At this hearing, the district judge stated that in determining Smith's base offense level he had believed that Smith was not in any manner "connected" to the 189 pounds of marijuana taken from Gallegos' shed and for that reason did not add the 189 pounds of marijuana to the 125 pounds of marijuana found in Smith's automobile. The judge, incidentally, noted that although he had orally announced that Smith was sentenced to 30 months imprisonment, he had not reduced the orally imposed sentence to written judgment. The judge went on to say that moments after sentencing Smith—as he was about to sentence Gallegos—he suddenly realized that Smith's pre-sentence report contained an admission by Smith that he was responsible for the marijuana taken from Gallegos' shed. The judge also noted that Gallegos had testified at his sentencing hearing that the marijuana in his shed had been placed there by Smith. Hence, the judge indicated that he was now going to add the 189 pounds of marijuana taken from Gallegos' shed to the 125 pounds of marijuana found in Smith's automobile and resentence Smith accordingly.

With this turn of events, Smith's counsel indicated that she was challenging the statement in Smith's pre-sentence report that Smith had admitted that he was responsible for the 189 pounds of marijuana taken from Gallegos' shed. The basis advanced for this challenge was that the probation officer who prepared the pre-sentence report had interviewed Smith at a time when Smith's counsel was not present, and that she had previously requested that the probation department not interview Smith unless she was present. Counsel also challenged the use of Gallegos' testimony to show Smith's connection to the 189 pounds of marijuana taken from Gallegos'

shed. The matter was at that point continued for an evidentiary hearing on these issues.

On February 1, 1990, there was a further hearing regarding the resentencing of Smith. At that hearing, defense counsel called as a witness the probation officer who prepared the pre-sentence report and who in the course of preparing the report had interviewed Smith on three separate occasions. He conceded that defense counsel was not present on any of these occasions, but stated that he was not aware that defense counsel had made any request that Smith not be interviewed unless she was present. The probation officer testified that Smith, when interviewed, more or less volunteered that he had placed the marijuana in Gallegos' shed, and that Smith's statement was not in response to a question. No other witness was called, although the prosecution offered a transcript of Gallegos' testimony at his own sentencing hearing where he testified that it was Smith who brought the marijuana to his residence, and, with Gallegos' permission, stored it in the shed. This transcript was received over objection.

Based on this testimony, the district court refused to strike from the pre-sentence report Smith's admission that he was responsible for the marijuana taken from Gallegos' shed. The court went on to observe that even if Smith's admission in the pre-sentence report was in anywise "tainted" by his attorney's alleged request to be present at any interview conducted by the probation office, Gallegos' testimony was itself sufficient to tie Smith to the 189 pounds of marijuana taken from Gallegos' shed.

Having made these findings, the district court determined that the aggregate amount of marijuana taken from Smith's automobile and Gallegos' shed placed Smith's base offense level at 26, and with the 2-point reduction for acceptance of responsibility set his net base offense level at 24. As indicated, the sentencing guideline range for a person with a base offense level of 24 and a criminal history category of I is 51 to 63 months. The district court

resentenced Smith to 56 months imprisonment.

## I. *Power to Resentence*

■ Smith's position is that the district judge had no power to resentence him on February 1, 1990, to 56 months imprisonment since the judge had previously orally sentenced him to 30 months imprisonment on December 15, 1989. At the hearing on December 22, 1989, Smith's counsel advised the court that she initially thought that the district court had the power to resentence Smith, but that after reading *United States v. Villano*, 816 F.2d 1448 (10th Cir. 1987), she came to the conclusion that the district court had no such power.

The district court thought *Villano* was distinguishable, as do we. *Villano* simply holds that a clear and unambiguous orally imposed sentence controls where the subsequently entered written sentence differs therefrom. Here, the orally imposed sentence was clear and unambiguous, but was predicated upon a misreading of the presentence report. And, as the district court noted, the district court caught its misreading before entry of the written judgment. Hence, this is not a case where the orally imposed sentence differs from a subsequently entered written judgment.

The government's position is that since Smith had not yet begun to serve the sentence imposed on him on December 15, 1989, the district court had the power to resentence him and correct its incorrect application of the guidelines. We agree.

In *United States v. De Francesco*, 449 U.S. 117, 134, 101 S.Ct. 426, 435–36, 66 L.Ed.2d 328 (1980), the Supreme Court stated that it is an "established practice" in federal courts that a sentencing judge may recall a defendant and *increase* his sentence, "at least (and we venture no comment as to this limitation) so long as he has not yet begun to serve that sentence," and that such resentencing does not violate any double jeopardy principle. In line with *De Francesco*, this Court in *United States v. Earley*, 816 F.2d 1428, 1433 (10th Cir.1987) noted that *De Francesco* had recognized the "established federal practice" under

which a sentencing judge can increase a defendant's sentence as long as the defendant has not yet begun to serve the sentence first imposed. *See also United States v. Lawson*, 670 F.2d 923, 929 (10th Cir.1982); *United States v. Preston*, 634 F.2d 1285, 1294–95 (10th Cir.1980), *cert. denied*, 455 U.S. 1002, 102 S.Ct. 1634, 71 L.Ed.2d 869 (1982); and *United States v. Davidson*, 597 F.2d 230, 232–33 (10th Cir. 1979), *cert. denied*, 444 U.S. 861, 100 S.Ct. 127, 62 L.Ed.2d 83 (1979).

In *Earley*, this Court reasoned that "a sentence does not have immediate 'finality,' and the court has the power to make corrections or enhance or reduce the sentence for some interim period of time." *Earley*, 816 F.2d at 1432. The federal rule sets "finality" where a convicted defendant crosses a "bright line" from the jurisdiction of the courts to executive custody. *Id.* at 1433. Hence, a criminal defendant whose sentence is appealable by the government under a statutory provision allowing for such an appeal, remains under the jurisdiction of the courts and can acquire no legitimate expectation in the finality of his original sentence, at least not until the time for appeal has expired. *United States v. Jackson*, 903 F.2d 1313, 1315 (10th Cir.1990) (citing *De Francesco*, 449 U.S. at 136, 101 S.Ct. at 437). An increase in the original sentence of such a defendant cannot be said to constitute an intrusion upon the values protected by the Fifth Amendment's double jeopardy clause. *Id.*

When Smith was resentenced on February 1, 1990, he was still under the jurisdiction of the courts as he had not yet begun to serve the sentence imposed on him on December 15, 1989. Moreover, Smith had no legitimate expectation in the finality of his original sentence since that sentence was appealable by the government under a statutory provision and the time to appeal had not yet expired when he was resentenced. *See* 18 U.S.C. § 3742(b)(2) ("The government, ... may file a notice of appeal ... for review ... of an otherwise final sentence if the sentence was imposed as a result of an incorrect application of the sentencing guidelines...."); and Fed.R.

App.P. 4(b) ("When an appeal by the government is authorized by statute, the notice of appeal shall be filed ... within 30 days after the entry of the judgment or order appealed from.").

## II. *Pre–Sentence Report*

█ Counsel claimed at the resentencing hearing that the statement attributed to Smith in the pre-sentence report that "he was responsible for placing the marijuana in the instant offense on Gallegos' property" should have been stricken because Smith had been interviewed by the probation officer out of her presence.[1] In this regard, counsel stated that it was her "established practice" to request the probation department not to interview her clients unless she was present during the interview, and that in the instant case she had made such a request. In this latter connection, the record before us does not clearly identify the person in the probation department to whom counsel directed her request. In any event, an addendum to the pre-sentence report indicates that the probation officer who interviewed Smith was unaware of such a request by counsel, and he so testified at Smith's resentencing hearing. Further, in the addendum to the pre-sentence report, the probation officer who prepared the report stated that "[t]he officer whom counsel claims to have given that instruction, denies that counsel made such a request." Based on the record then be-

fore him, the district court refused to strike Smith's admission in the pre-sentence report, and, on appeal, we are not inclined to disturb that ruling.[2]

## III. *Gallegos' Testimony*

█ In view of the fact that we have now held that the district court did not err in refusing to strike from the pre-sentence report Smith's admission, we need not determine whether the district court acted improperly in considering, as an alternative ground for resentencing, the testimony of Gallegos given at his own sentencing hearing, at a time when neither Smith nor his counsel was present.[3] However, under *United States v. Beaulieu*, 893 F.2d 1177 (10th Cir.1990), it would appear that the district court did not err.

In *Beaulieu* we said that "[c]learly, a defendant at sentencing does not have an absolute right to confront witnesses whose information is made available to the court." *Id.* at 1180 (citing *United States v. Sunrhodes*, 831 F.2d 1537, 1543 (10th Cir. 1987)). We further stated that "[i]t is not a denial of due process for the trial judge, when determining sentence, to rely on evidence given by witnesses whom the defendant could neither confront nor cross-examine." *Id.* at 1181 (quoting *United States v. Carmona*, 873 F.2d 569 (2nd Cir.1989)). *See also United States v. Mays*, 902 F.2d

---

1. Defense counsel's argument was that the probation officer failed to advise Smith during any of the interviews that his answers could be considered by the district judge in imposing his sentence. However, at the hearing in which Smith and the two co-defendants entered their guilty pleas, the district judge specifically stated that:

    "The sentencing judge is required to take into account all conduct ... whether or not this is charged by the government.... [T]here is no limitation placed on the information that the sentencing judge can consider at the time of sentencing.... The court will consider all relevant conduct...."

2. In *United States v. Rogers*, 899 F.2d 917, 919–20 (n. 7) (10th Cir.1990), this Court acknowledged the position taken by three circuits that a defendant does not have a Sixth Amendment right to be represented by counsel at a pre-sentence interview. *See United States v. Jackson*,

886 F.2d 838, 843–44 (7th Cir.1989); *Brown v. Butler*, 811 F.2d 938, 941 (5th Cir.1987); *Baumann v. United States*, 692 F.2d 565, 577–78 (9th Cir.1982). We then stated that we were in agreement with those circuits and held that "a routine post-conviction pre-sentence interview is not a 'critical stage' of the proceedings at which a defendant has a Sixth Amendment right to be represented by counsel." *Rogers*, 899 F.2d at 919–20 (n. 7).

3. Defense counsel first objected to the district court's use of Gallegos' testimony to show Smith's connection to the 189 pounds of marijuana at the December 22, 1989 hearing. Counsel stated that "if I had an opportunity to cross-examine Mr. Gallegos it would be fair game." Pursuant to this request, the district court scheduled an evidentiary hearing on February 1, 1990. However, Smith's attorney failed to call Gallegos as a witness at this evidentiary hearing.

1501, 1503 (10th Cir.1990); and *United States v. Rutter*, 897 F.2d 1558, 1563 (10th Cir.1990). *See generally* 18 U.S.C. § 3661 ("[N]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court ... may receive ... for the purposes of imposing an appropriate sentence."); and Guidelines § 6A1.3 ("In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability....").

### IV. *The 189 Pounds of Marijuana*

■ Counsel contends that in any event it was improper for the district court to factor into Smith's base offense level the 189 pounds of marijuana taken from Gallegos' shed. In this regard, counsel argues that the information to which Smith pleaded guilty charged him with the possession with an intent to distribute more than 50 kilograms of marijuana, but that he did *not* plead guilty to the indictment, which charged him with the possession of *more* than 100 kilograms of marijuana with an intent to distribute. Further, counsel argues that there was nothing to indicate that the 189 pounds of marijuana taken from Gallegos' shed was in anywise connected to the possession and attempted sale of the 125 pounds of marijuana. We do not agree.

In our view, the district court did not err in factoring into Smith's base offense level the 189 pounds of marijuana seized from Gallegos' shed. Guidelines § 1B1.3 provides that in determining a base offense level all acts and omissions aided and abetted by the defendant, as well as all acts which were part of the same course of conduct, should be considered. In the Commentary to that guideline is the statement that in a drug distribution case, quantities and types of drugs not specified in the charge with which defendant stands convicted are to be included in determining the base offense level "if they were part of

the same course of conduct or part of a common scheme or plan as the count of conviction." Guidelines § 1B1.3, comment. at 1.19. *Accord* § 2D1.1, comment. (n. 12) ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level"). *See also United States v. Preciado*, No. 89–2147, slip op. (10th Cir. Aug. 6, 1990); *United States v. Valle–Sanchez*, 912 F.2d 424, 426 (10th Cir.1990); *United States v. Harris*, 903 F.2d 770, 778 (10th Cir.1990); and *United States v. Ware*, 897 F.2d 1538, 1542–43 (10th Cir.1990), *cert. denied,* —— U.S. ——, 110 S.Ct. 2629, 110 L.Ed.2d 649 (1990).

The district court was of the view that the 189 pounds of marijuana found in Gallegos' shed was related to the crime to which Smith had pleaded guilty, namely, possession on May 15, 1989, of more than 50 kilograms of marijuana with an intent to distribute. We are not inclined to disturb this ruling. As of May 18, 1989, Gallegos had 314 pounds of marijuana stored in his shed by Smith. He and Smith loaded 125 pounds of that marijuana into Smith's car and Smith and Mirabal then tried to sell the 125 pounds to undercover agents. Shortly after the aborted "sale," which resulted in the arrest of Smith and Mirabal, Gallegos was arrested and the remaining marijuana in Gallegos' shed, i.e., 189 pounds of marijuana, was seized. The possession of the 189 pounds of marijuana was part of the same course of conduct as the charge to which Smith pleaded guilty, i.e., possession on May 15, 1989, of more than 50 kilograms of marijuana with an intent to distribute. *See United States v. Sailes*, 872 F.2d 735, 737–39 (6th Cir.1989). *See also United States v. Trujillo*, 906 F.2d 1456, 1467–68 (10th Cir.1990) (citing *Sailes*, 872 F.2d at 737–39); *United States v. Boyd*, 901 F.2d 842, 844 (10th Cir.1990); *United States v. Rutter*, 897 F.2d 1558, 1561–63 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990). We find no error in this regard.

Judgment affirmed.

McKay, Circuit Judge, dissenting:

In this case the trial court examined the presentence report and considered all of the evidence therein, specifically including 189 pounds of marijuana which the probation report recommended be included in the defendant's sentence. After reading the presentence report and listening to counsel's argument concerning the 189 pounds of marijuana, the court specifically determined not to include it in the sentence. The court then properly calculated the Guideline sentence based on its own factual determinations and sentenced the defendant accordingly. There is not the slightest hint, implied or in fact, that the trial court intended that judgment to be anything other than final or that the court intended to impose any sentence other than the one which was pronounced. In fact, the record is conclusive to the contrary. The trial court then granted the defendant permission to surrender himself to the prison, whereupon the defendant, who was on bond, left the court with his attorney.

No one—not the government, not the defendant—claims that anything about the original sentence:

(1) Was illegal. *See United States v. Rico*, 902 F.2d 1065 (2d Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990) (amended Rule 35 does not repudiate authority of district court to correct illegal sentence); *United States v. Arrellano–Rios*, 799 F.2d 520, 524 (9th Cir.1986) (defendant can have no legitimate expectation of finality in illegal sentence); *United States v. Henry*, 709 F.2d 298, 307–08 (5th Cir.1983) (suggesting that court's power to correct illegal sentence derives from court's lack of jurisdiction to impose illegal sentence).

(2) Was ambiguous. *See United States v. Earley*, 816 F.2d 1428, 1430 (10th Cir. 1987) (internally ambiguous or self-contradictory sentence is "illegal" and may be corrected at any time); *United States v.*

*Villano*, 816 F.2d 1448, 1451 (10th Cir. 1987) (written order may clarify ambiguous oral sentence).

(3) Contained any misstatement of intent by the court. *See United States v. Preston*, 634 F.2d 1285, 1294 (10th Cir.1980), *cert. denied*, 455 U.S. 1002, 102 S.Ct. 1634, 71 L.Ed.2d 869 (1982) (trial judge may alter sentence to correct misstatement).

(4) Was obtained by any fraud or misrepresentation by the defendant. *See United States v. Jones*, 722 F.2d 632, 638 (11th Cir.1983) (defendant who purposely creates error on sentencer's part has no legitimate expectation of finality in sentence).

(5) Was overturned by an appeals court. *See United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (increase of sentence pursuant to statute allowing government appeal does not violate double jeopardy clause).

(6) Was pronounced after a retrial. *See North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (increased sentence after retrial does not violate double jeopardy).

(7) Involved the misapplication of any statute. *See Bozza v. United States*, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947) (increase of sentence where court failed to impose mandatory sentence does not violate double jeopardy); *United States v. Cook*, 890 F.2d 672, 675 (4th Cir.1989) (court may correct sentence mistakenly imposed because of acknowledged misinterpretation of guidelines).

(8) Contained any ground which permitted the government to appeal the sentence pursuant to the sentencing reform statute.[1]

In fact, the sentence thus pronounced contained none of the deficiencies which heretofore have permitted a trial court to increase a sentence after final judgment has been pronounced. Nonetheless, after sentence was imposed, and after the defen-

---

1. The pertinent section of the sentencing reform legislation provides that the government may appeal "an otherwise final sentence" if it

  (1) was imposed in violation of law;

  (2) was imposed as a result of an incorrect application of the sentencing guidelines;

  (3) is less than the sentence specified in the applicable guideline range ...; or

  (4) was imposed for an offense for which there is no sentencing guidelines and is plainly unreasonable.

18 U.S.C. § 3742(b) (1988).

dant had left the court to surrender to prison authorities, the trial court, while considering another sentence, revised its *judgment about facts which it had already considered.* The trial court then summoned the defendant back into the court, not only for resentencing but also to hold a hearing to reconsider the *facts* to be taken into account in that resentencing.

The defendant argues that the district court lacked authority to resentence him under Fed.R.Crim.P. 35. I agree. Furthermore, I believe the defendant's double jeopardy rights were violated.

## I. Rule 35

Neither the government nor the majority cites any authority in support of the position that a trial court may, on its own, upset a legal, unambiguous, and final judgment in order to reweigh the facts. In those instances where juries determine sentence, the jurors may not go to coffee after a verdict, decide they had overlooked a clear piece of evidence in the record, and ask to revise that judgment based on afterthoughts about that evidence. Similarly, the court has no authority to, *sua sponte,* retry the facts relating to sentencing.

As stated by the Ninth Circuit, "a district court does not have inherent power to resentence defendants at any time. Its authority to do so must flow either from the court of appeals mandate ... or from Federal Rules of Criminal Procedure 35." *United States v. Minor,* 846 F.2d 1184 (9th Cir.1988) (citations omitted). In *United States v. Henry,* the Fifth Circuit investigated the power of trial courts to increase legal sentences. *See Henry,* 709 F.2d at 298. *Henry* concludes that the trial court has no such inherent power, nor is it grant-

ed any such power by Fed.R.Crim.P. 35.[2] The Fifth Circuit explained its conclusion as follows:

> The original version of the rule [drafted in 1946] had two parts. The first ... gave the courts the power to correct an "illegal sentence" at any time; the second ... gave the courts the power to reduce a legal sentence within sixty ... days. The official Advisory Committee note to the rule then states only that— except for the insertion of the sixty-day period for the old term-of-court limitation ...—both parts of the rule "continue[ ] existing [decisional] law." The various printed preliminary drafts give no further guidance beyond the addition of a treatise citation for the reference to "existing law."
>
> . . . .
>
> The authorities on this point leave virtually no room for doubt. As eventually set out in the rule, a court in the years before 1946 had *only* the power, first, to reduce a legal sentence before the end of the term of court during which the sentence was imposed, and second, to correct an illegal sentence at any time. If the court failed to act before the end of the term it lost all power to reduce the sentence. There was no "inherent" power of any kind. The court's correlative power to correct an illegal sentence at any time, on the other hand, sprang from the court's want of jurisdiction to impose the illegal sentence in the first place. . . .

*Id.* at 307–08 (citations omitted) (emphasis in original).

The majority cites a dictum from *United States v. DiFrancesco,* 449 U.S. 117, 134, 101 S.Ct. 426, 435–36, 66 L.Ed.2d 328 (1980), stating that a court may increase a

---

**2.** Rule 35 was amended in 1987. The former version of Rule 35 interpreted in *Henry* and *Minor* reads as follows:

**(a) Correction of Sentence.** The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

**(b) Reduction of Sentence.** A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation

is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

sentence up to the time the defendant begins to serve that sentence. *DiFrancesco,* 449 U.S. at 134, 101 S.Ct. at 435–36. I do not believe, however, that this dictum can be interpreted to mean that a trial court has inherent power to increase a sentence for any reason, or for no reason at all. The cases cited by *DiFrancesco* involve sentences which were partially illegal and which were misspoken by judges who were operating under mistakes of law. The resentencing in these cases merely allowed the courts to effectuate their original sentencing intent. *See United States v. DiLorenzo,* 429 F.2d 216, 221 (2d Cir.1970), *cert. denied,* 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971) (resentencing allowed where judge mistakenly imposed sentence on one count which exceeded legal maximum); *Vincent v. United States,* 337 F.2d 891 (8th Cir.1964), *cert. denied,* 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281 (1965) (increase of sentence on one count allowed where judge mistakenly imposed sentence on another count which exceeded legal maximum). *Compare United States v. Shue,* 825 F.2d 1111, 1113 (7th Cir.) *cert. denied,* 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987) (trial court has inherent power to resentence in order to effectuate original sentencing intent).

The case before us is distinct from those cited in *DiFrancesco.* In this case, the sentencing judge weighed the facts before him and imposed an unambiguous sentence which accurately reflected his intent at that time. He then changed his mind about those same facts, and decided to resentence. Unlike *Vincent* and *DiLorenzo,* the judge in this case did not wish to correct a misspoken, ambiguous, illegal sentence; he simply wanted to redo the underlying proceeding. This is beyond the limited jurisdiction granted by Rule 35. "[A]s the Rule's language and history make clear, the narrow function of Rule 35 is to permit correction at any time of an illegal sentence, not to re-examine errors occurring at the trial *or other proceedings prior to the imposition of sentence."* *Hill v. United States,* 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1961).

If the district court lacked jurisdiction to resentence under previous formulations of Rule 35, *a fortiori* it lacks jurisdiction under the current version of Rule 35, which governs this case.[3] The current version of Rule 35 places new limits on the power of a district court to resentence. *See United States v. Howard,* 902 F.2d 894, 897 (11th Cir.1990) (change in Rule 35 removes district court's ability to resentence at own discretion); *United States v. Jordan,* 915 F.2d 622, 627 (11th Cir.1990) (new version of Rule 35 removes district court's authority under the rule to correct any illegal sentence imposed). *But see United States v. Rico,* 902 F.2d at 1067 (new Rule 35 does not repudiate inherent power of court to correct illegal sentence). In *United States v. Cook,* the Fourth Circuit stated:

> Prior to November 1, 1987, Rule 35 of the Federal Rules of Criminal Procedure allowed a sentencing judge substantial latitude to amend a sentence after the public sentencing hearing.…
>
> Congress amended Rule 35 as part of the Sentencing Reform Act of 1984.… The legislative history indicates that Congress amended Rule 35 so that it would

**3.** Rule 35 was amended, effective November 1, 1987. The current version reads:

**(a) Correction of a Sentence on Remand.** The court shall correct a sentence that is determined on appeal under 18 U.S.C. 3742 to have been imposed in violation of law, to have been imposed as a result of an incorrect *application of the sentencing guidelines,* or to be unreasonable, upon remand of the case to the court—

(1) for imposition of a sentence in accord with the findings of the court of appeals; or

(2) for further sentencing proceedings if, after such proceedings, the court determines that the original sentence was incorrect.

**(b) Correction of Sentence for Changed Circumstances.** The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code. The court's authority to lower a sentence under this subdivision includes the authority to lower such sentence to a level below that established by statute as a minimum sentence.

accord with 18 U.S.C. § 3742 concerning appellate review of sentences. The underlying purpose was to impose on the new sentencing system a requirement that the sentence imposed in the public forum during the sentencing hearing would remain constant, immune from later modification.

890 F.2d at 674 (citations omitted).

The *Cook* court held that the trial court had power to correct an illegal sentence which was unauthorized by the guidelines and which resulted from the sentencing judge's mistake of law. But the court then cautioned, "We emphasize that our holding is a very narrow one. *The power of a district court to amend a sentence does not extend to a situation where the district judge simply changes his mind about the sentence." Id.* at 675 (emphasis added).

I conclude that the trial court was without jurisdiction to change its mind about Mr. Smith's sentence. As I enumerated at the outset, none of the circumstances existed which would have given the court power to increase the sentence. Thus, the trial court had no inherent power, nor any power granted under Rule 35, to retry the sentencing facts and increase Mr. Smith's sentence.

## II. Double Jeopardy

The guiding principle of double jeopardy analysis in sentencing cases is that the courts may not upset a defendant's "legitimate expectations" in the finality of his sentence. *See United States v. DiFrancesco,* 449 U.S. 117, 137, 101 S.Ct. 426, 437–38, 66 L.Ed.2d 328 (1980). Interpreting *DiFrancesco,* the D.C. Circuit stated:

If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause. If, however, there is some circumstance which undermines the legitimacy of that expectation, then a court may permissibly increase the sentence.

. . . .

... We think ... that a defendant has a legitimate expectation in the finality of a sentence unless he is or should be aware at sentencing that the sentence may permissibly be increased.

*United States v. Fogel,* 829 F.2d 77, 87 (D.C.Cir.1987). *See Jones v. Thomas,* 491 U.S. 376, 109 S.Ct. 2522, 2532, 105 L.Ed.2d 322 (1989) (quoting *Fogel* with approval).

The situations that I listed numerically at the outset represent the kinds of circumstances which, the courts have concluded, actually or impliedly put the defendant on notice that he cannot expect finality in his sentence. If, as I have concluded, no circumstances existed here which would have given the district court jurisdiction to resentence the defendant, then he must necessarily have had a legitimate expectation of finality in his original sentence. His double jeopardy rights must, therefore, have been violated when his sentence was increased.

Even if the trial court had jurisdiction to resentence in this case, however, I believe this judgment was final for double jeopardy purposes. I am unable to find a single case (nor should there be one) in which any court has concluded that a sentence which clearly reflects the trial court's then-judgment about sentencing facts may be revised upward, when the basis for revising the sentence is a reconsideration of the factual predicate for the sentence. Nor can I find a case in which the sentence has been revised upward based on a reconsideration of the judge's considered, discretionary judgment about what sentence should follow from the facts before him. When carefully read, not a single case among those listed by the majority suggests that, under the circumstances of this case, the defendant has no expectation of finality. There is some loose language in a number of the cases from which someone might take superficial comfort. But I believe that language has never been considered in this context and does not properly apply here. Furthermore, I think the broad rules stated by the majority do not withstand analysis.

For example, the majority states that "Smith had no legitimate expectation in the finality of his original sentence since that sentence was appealable by the govern-

ment under a statutory provision and the time to appeal had not yet expired when he was resentenced." Maj. op. at 1457. The majority apparently has taken a statement from *DiFrancesco* out of context and attempted to convert it into a sweeping rule. *See DiFrancesco*, 449 U.S. at 136, 101 S.Ct. at 437 ("The defendant ... is charged with knowledge of the statute and its appeal provisions, and has not expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired."). Properly viewed, time for appeal is an impediment to the assertion of a double jeopardy claim only when grounds exist for a government appeal and the government does, in fact, appeal. *See* 18 U.S.C. § 3742(b) (listing grounds for government appeal of sentence).

In this case, none of the grounds on which the government could base an appeal are present. Nothing in the cases cited by the majority suggests that, because there are limited grounds on which the government could upset a sentence, all sentences are, therefore, nonfinal. There is simply no analytical or logical support for the implied notion that *all* sentencing decisions may be reconsidered *de novo* for the thirty days during which the government *may* exercise its election to appeal, even if no grounds for that appeal exist. What the panel has authorized here is just that: A *de novo* review of a final judgment when no appeal has been filed. The result of this decision is that all sentences may be reconsidered *de novo* anytime either the defendant or the government still has time to appeal—probably even after the defendant has started to serve his sentence. *See DiFrancesco*, 449 U.S. at 138–39, 101 S.Ct. at 438–39 (commencement of sentence not absolute bar to increase of sentence).

I also take issue with the majority's reliance on the "bright line" rule that finality occurs when a defendant enters "executive custody." The "executive custody" rule is a refinement of the old rule that a defendant's sentence may not be increased after he has begun to serve that sentence. *See DiFrancesco*, 449 U.S. at 138–39, 101 S.Ct. at 438–39. The Supreme Court all but obliterated that "bright line" in *DiFrancesco*.

As the D.C. Circuit stated, "It is clear ... that there no longer exists a *per se* rule that prohibits a court from increasing a defendant's sentence after service has begun." *Fogel*, 829 F.2d at 86. *Accord United States v. Bishop*, 774 F.2d 771, 775 n. 6 (7th Cir.1985); *United States v. Jones*, 722 F.2d at 636–37. I do not believe that *DiFrancesco* should be read to mean that, under the double jeopardy clause, courts may now increase a sentence for specified reasons after service of a sentence has begun, but that they may increase a sentence for any reason or for no reason at all before service of a sentence has begun. There must be a principled way to limit the resentencing power of the courts in the preservice period. I respectfully suggest that double jeopardy "finality" in the preservice period should depend on the defendant's legitimate expectations. Such a rule would eliminate the misapplications and logical inconsistencies which have been engendered by the "bright line," "executive custody" rule. Furthermore, such a rule is consistent, not only with the rationale of *DiFrancesco* but with the legislation governing sentencing.

This court's past interpretation of the "executive custody" rule, on which it now relies, illustrates the potential for its misapplication. In *United States v. Davidson*, 597 F.2d 230 (10th Cir.), *cert. denied*, 444 U.S. 861, 100 S.Ct. 127, 62 L.Ed.2d 83 (1979), the trial court sentenced the defendant on two counts without specifying whether the terms were to run consecutively or concurrently. After sentencing, the defendant was held briefly in a detention cell before being transported to the prison. While the defendant was being transported to the prison by the United States Marshal, the court, via car radio, ordered that the defendant be returned to the courthouse. On the defendant's return to the courthouse, approximately one hour after the original sentencing, the district court stated that the sentences were to run consecutively. *Id.* at 232–33. This court upheld the resentencing against a double jeopardy challenge because the defendant "had not been transferred to executive custody

when the amended sentence was imposed.... [He] was still in judicial custody." *Id.* at 233. Unless I misread 28 U.S.C. § 561 (1988)[4], the Marshal *is* the executive. *See also Pennsylvania Bureau of Correction v. United States Marshals Service,* 474 U.S. 34, 47, 106 S.Ct. 355, 363, 88 L.Ed.2d 189 (1985) (Stevens, J., dissenting) (Marshals supervised by Attorney General since 1861; control "formalized" in 1969). I mention *Davidson* to illustrate the difficulty we have encountered in trying to determine when "service of a sentence" actually begins.

The majority's holding also creates a disparity between the double jeopardy protections afforded to defendants sentenced to probation and those sentenced to a term of imprisonment. The majority holds that a sentence of imprisonment does not begin until the defendant enters "executive custody." By contrast, the statute governing the commencement of a term of probation for purposes of calculating time served states: "A term of probation commences on the day that the sentence of probation is imposed, unless otherwise ordered by the court." 18 U.S.C. § 3564(a) (1988). Yet the majority states that "the court has the power to make corrections or enhance or reduce the sentence for some interim period of time." Maj. op. at 1457 (quoting *Earley,* 816 F.2d at 1432). Would the majority take the position that, even if a probationer had not violated the terms of his probation, he could still be brought before the court "for some interim period of time" to have his sentence increased? If so, this conflicts with the statute governing when sentence begins, and, under the majority's analysis, the statute governing finality for double jeopardy purposes. Yet if we follow that statute, then probationers are protected by the double jeopardy clause from the moment of pronouncement of sentence, while other defendants are not. I can find no principled reason to create this distinction.

A further problem with the majority's analysis is the difficulty of defining the length of the "interim period of time" during which the court can resentence. *See, e.g., Preston,* 634 F.2d at 1294 (where defendant has not yet left courtroom or is returned to courtroom on same day, trial judge may alter sentence to correct misstatement); *Davidson,* 597 F.2d at 232–33 (defendant resentenced within approximately one hour). The briefness of the lapse of time should not be legally significant. Rather, the finality of the judgment should control. After a judgment of not guilty, a jury cannot be called back to reconsider just because that call-back was "within a short time" of that verdict and judgment. In sentencing cases, there is no more analogical support for *de novo* review of facts or discretionary judgment where the *intent* was final than in the case of a not-guilty determination.[5]

By contrast, a uniform rule based on the defendant's legitimate expectations of finality as discussed in *DiFrancesco,* applied without regard to whether service of the sentence has begun, eliminates the analytical problems just discussed. Furthermore, such a rule is consistent with the statutes currently governing sentencing. The legislative history of the sentencing reform legislation states that "[t]he Committee intends that a sentence be subject to modification through the appellate process, although it is final for other purposes."

---

**4.** This statute states in pertinent part:

(a) There is hereby established a United States Marshals Service as a bureau within the Department of Justice under the authority and direction of the Attorney General.

**5.** While I recognize that "the pronouncement of sentence has never carried the finality that attaches to an acquittal," *DiFrancesco,* 449 U.S. at 133, 101 S.Ct. at 435, I do not take that to mean that a sentence has no finality whatsoever. I agree with the D.C. Circuit, which stated,

Significantly, the Court did not state that no finality attaches to a sentence. We think the Court must be understood to have meant that a sentence does not have the same degree of finality that an acquittal does. Thus, a defendant has some lesser expectation of finality in the severity of a sentence.

*Fogel,* 829 F.2d at 87. While an acquittal is accorded virtually absolute finality, sentences may be upset if certain specified conditions are met. But in my view, unless one of those conditions are present, the sentence should be considered final.

H.R.Rep. No. 1030, 98th Cong., 2d Sess. 154, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3337. Accordingly, the statute governing terms of imprisonment sets out the conditions under which a sentence of imprisonment may be modified or corrected, then states, "a judgment of conviction that includes such a sentence constitutes a *final judgment for all other purposes.*" 18 U.S.C. § 3582(b) (1988). The statutes governing sentences of probation and fines contain identical language. 18 U.S.C. §§ 3562(b), 3572(c) (1988). "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984) (citations omitted). It follows, then, that the determination of "finality" for double jeopardy purposes should comport with the clear language of the statute, and be considered final when pronounced unless one of the statutory factors allowing modification appears.

### III. Conclusion

While it may be platitudinously true that sentencing should not "be a game in which a wrong move by the judge means immunity for the prisoner," *DiFrancesco,* 449 U.S. at 135, 101 S.Ct. at 436, neither should it be a trial run at which the judge weighs the facts with the power to redo that process if he has second thoughts while the defendant is on bail, on probation, in transit to prison, or otherwise somewhere other than behind prison doors. Because *DiFrancesco* has severely undermined the old "bright line" finality rule for double jeopardy analysis in sentencing cases, I believe that the time has come to reformulate the finality rule to be consistent with the *DiFrancesco* analysis in all circumstances and to eliminate the confusing, sometimes conflicting, baggage which has accumulated over the years.

In this case, because none of the factors were present which would have put the defendant on notice that his sentence may be upset, I would find that the defendant had a legitimate expectation of finality in his sentence. I would therefore hold that Mr. Smith's double jeopardy rights were violated, without regard to whether service of his sentence had begun. In any event, however, I believe the trial court lacked jurisdiction to resentence under these circumstances.

For the foregoing reasons, I am unable to agree with the majority opinion and must respectfully dissent.