**UNITED STATES of America, Appellee,**

v.

**Charles BARNHART, Appellant.**

No. 92–3142.

United States Court of Appeals, Third Circuit.

Argued Oct. 2, 1992.

Decided Nov. 6, 1992.

Thomas S. White, Federal Public Defender, W. Penn Hackney, First Asst. Federal Public Defender, Karen Sirianni Gerlach, Asst. Federal Public Defender, Counsel of Record, Jay J. Finkelstein (argued), Asst. Federal Public Defender, Pittsburgh, Pa., for appellant.

Thomas W. Corbett, Jr., U.S. Atty., Paul J. Brysh (argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

Before: SLOVITER, Chief Judge GREENBERG and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

Charles Barnhart, the appellant, violated his probation by failing to report to his probation officer on three separate occasions. After Barnhart's probation was revoked by the district court, he was sentenced to five years imprisonment. On appeal, Barnhart claims he was denied due process at the time he was sentenced because the district court was influenced by three unrelated arrests made while Barnhart was on probation. Barnhart also claims that the district court wrongfully revoked his probation because of his status as an alcoholic. Finding no merit in Barnhart's "alcoholic" claim, we address only his due process claim. We will affirm.

### I.

On December 2, 1985 Charles Barnhart pled guilty in the United States District Court for the Western District of Pennsyl-

vania to the first and third counts of a three-count indictment. Barnhart was sentenced on January 10, 1986. On Count 3, "Escaping from an Institution and Facility in violation of 18 U.S.C. § 751(a)," the district court sentenced Barnhart to five years imprisonment. On Count 1, "Altering, Passing, Uttering, and Publishing Forged and Altered United States Postal Service Money Orders in violation of 18 U.S.C. § 500," Barnhart was placed on probation for a five year period to run consecutively to the sentence imposed on Count 3. Upon motion by the government, the district court dismissed Count 2.

Barnhart was paroled from federal custody on November 10, 1988, at which time he was imprisoned for two years by the Commonwealth of Pennsylvania pursuant to a state detainer. Upon expiration of his federal parole on January 9, 1991, Barnhart began to serve his five-year probation term. Among several express conditions of his probation, Barnhart was required to "report to the probation officer as directed."[1] Within nine months, Barnhart violated that condition on September 30, 1991 by failing to report to his probation officer. Barnhart was sent a notice on October 3, 1991, instructing him to report to the probation officer on November 4, 1991. Barnhart failed to report on that date. On November 15, 1991, Barnhart was directed to report on November 26, 1991 and, again, Barnhart failed to appear. On none of these occasions did Barnhart communicate with his probation officer to explain his absence. On December 10, 1991, the Probation Office filed a petition to revoke Barnhart's probation, charging that Barnhart had violated the express condition of his probation requiring him to report to the probation officer as directed.

At the probation revocation hearing on March 13, 1992, Barnhart admitted to the three missed meetings in violation of the terms of his probation, but he presented to the court what he believed to be mitigating circumstances. Barnhart testified that the stress of employment difficulties had aggravated his drinking problem and had driven him to depression. As his life went "down hill," he testified, he was afraid to meet with his probation officer.

After hearing this testimony, the district court ordered the revocation of Barnhart's probation, stating, "The Court finds, and it has been admitted by the defendant probationer, that he is in violation of the terms of his probation by not reporting on the dates that he was instructed to report." The court declined to sentence Barnhart to a long-term alcoholic treatment program, sentencing him instead to five years imprisonment with a recommendation that he receive treatment for alcohol and drug abuse during the course of his incarceration.

Prior to the revocation hearing, the probation officer had provided the district court with copies of police reports in connection with the criminal charges pending against Barnhart. On November 21, 1991 and again on December 8, 1991, Barnhart's grandmother and mother lodged criminal complaints against him for the alleged theft of their television set, purses, and cash. On February 24, 1992, Pittsburgh police arrested Barnhart for allegedly robbing an automobile salesman at knifepoint after taking a test drive.

Although Barnhart and his counsel apparently were not aware that the court had been provided with these specific documents, they were aware that the court had

---

1. Barnhart's conditions of probation read as follows:

(1) You shall refrain from violation of any law (federal, state, and local). You shall get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer.
(2) You shall associate only with law-abiding persons and maintain reasonable hours.
(3) You shall work regularly at a lawful occupation and support your legal dependents, if any, to the best of your ability. When out of

work you shall notify your probation officer at once. You shall consult him prior to job changes.
(4) You shall not leave the judicial district without permission of the probation officer.
(5) You shall notify your probation officer immediately of any change in your place of residence.
(6) You shall follow the probation officer's instructions.
(7) You shall report to the probation officer as directed.

been apprised of the pending charges. At the revocation hearing, Barnhart's counsel addressed the court specifically on that issue, stating "I believe Your Honor's aware that Mr. Barnhart is facing state charges." The court responded, "Yes, he is." After thus confirming that the court was cognizant of the pending charges, defense counsel did not pursue the matter further. The district court entered its final order revoking probation and sentencing Barnhart to five years imprisonment on March 13, 1992. Barnhart timely appealed that order to this court.

■ We have appellate jurisdiction over the district court's final order pursuant to 28 U.S.C. § 1291. Our standard of review for Barnhart's due process claim is plenary.

## II.

■ Barnhart claims that the district court denied him due process of law by revoking his probation and sentencing him based on the criminal charges pending against him. Although revocation of probation, like revocation of parole, is not a stage of a criminal prosecution, it "does result in a loss of liberty," *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973), and is subject, therefore, to "minimum requirements of due process." *Id.; see also Black v. Romano,* 471 U.S. 606, 612, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985) (citing *Scarpelli* ). Those requirements include

"(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body ... and (f) a written statement by the factfinder as to

evidence relied on and reasons for revoking [probation or] parole."

*Scarpelli,* 411 U.S. at 786, 93 S.Ct. at 1762 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)). *See Black v. Romano,* 471 U.S. at 612, 105 S.Ct. at 2258 (restating *Scarpelli* requirements).

These due process requirements have been incorporated into the Federal Rule of Criminal Procedure which governs revocation or modification of probation or supervised release. *See* Fed.R.Crim.P. 32.1 and advisory committee's note (discussing derivation of Rule 32.1 from *Scarpelli* and *Morrissey* ). Rule 32.1(2) establishes the procedure for revocation hearings consistent with *Scarpelli* and *Romano:*

[32.1](2) **Revocation Hearing.** The revocation hearing, unless waived by the person, shall be held within a reasonable time in the district court of jurisdiction. The person shall be given

(A) written notice of the alleged violation;

(B) disclosure of the evidence against the person;

(C) an opportunity to appear and present evidence in the person's own behalf;

(D) the opportunity to question adverse witnesses; and

(E) notice of the person's right to be represented by counsel.

Fed.R.Crim.P. 32.1(2).

■ Barnhart claims that, in violation of due process and the Federal Rules of Criminal Procedure,[2] he was not notified that the three arrests which were made during his probation would be considered by the district court. He claims that he was deprived of an opportunity to address them at the probation revocation hearing.

Barnhart has identified nothing in the record, however, to indicate that the district court based its revocation and its sentencing decision on the pending charges.

---

**2.** Although Barnhart claims that on sentencing after revocation of probation the Federal Rules of Criminal Procedure establish particular requirements of notice, opportunity to address information on which the district court relies,

and opportunity to introduce testimony, neither his brief nor his oral argument has identified any Rule pertaining to such requirements. As we note in text, no such provision appears in Fed.R.Crim.P. 32.1.

Indeed, the district judge expressly stated that he was revoking Barnhart's probation solely because of his failure to appear at the three scheduled meetings with his probation officer, and that he was sentencing Barnhart to five years imprisonment only because of his failure to "put his life together." Moreover, the record reveals not only that Barnhart and his counsel were, themselves, aware of the pending charges, but that they knew that the district court was aware of them as well. If Barnhart and his attorney had desired to address those charges at the revocation hearing, they had ample opportunity to do so.

The record discloses that the district court complied in all respects with the requirements of *Scarpelli, Romano,* and Fed.R.Crim.P. 32.1 in conducting Barnhart's revocation hearing. First, the probation officer's petition for revocation provided Barnhart with written notice of the alleged probation violations: the failure to report to the probation officer on three different dates. Second, the probation officer testified that Barnhart had missed the three meetings in question. In addition, Barnhart himself admitted to his failure to report on the three specified dates. Third, Barnhart was provided with an opportunity to be heard and to present evidence in his own behalf. He used that opportunity to present what he believed to be mitigating circumstances which caused him to miss his probation meetings. Fourth, Barnhart was granted an opportunity to question the probation officer, the only adverse witness presented against him, but declined to do so. Fifth, Barnhart was represented by counsel. Sixth, Barnhart does not allege, nor does the record remotely suggest, that the district court was not neutral and detached. Finally, upon revoking Barnhart's probation, the district court provided a clear statement as to the evidence on which it relied and the reasons for revoking Barnhart's probation. The court expressly stated, "it has been admitted by the defendant probationer ... that he is in violation of the terms of his probation by not reporting on the dates that he was instructed to report." [3]

We are satisfied that the district court properly exercised its discretion in revoking Barnhart's probation for failure to report to his probation officer. In order to revoke probation, it is necessary "only that the court be reasonably satisfied that [the probationer] has violated one of the conditions of his probation." *United States v. Manuszak,* 532 F.2d 311, 317 (3d Cir.1976). Here, not only was the evidence of Barnhart's failure to report uncontradicted, but Barnhart himself admitted to violating the condition that he report. This court has held that such a failure-to-report violation, alone, may justify revocation of probation. *United States v. Babich,* 785 F.2d 415, 418 (3d Cir.), *cert. denied,* 479 U.S. 833, 107 S.Ct. 123, 93 L.Ed.2d 69 (1986). *See also United States v. Morin,* 889 F.2d 328, 332 (1st Cir.1989) ("there is no question that failure to comply with reporting requirements is a serious violation of probationary conditions").

Barnhart, however, argues that the district court did not base its revocation decision on the missed meetings alone, but on Barnhart's recent arrest record as well. In support of this claim, Barnhart points only to the district judge's acknowledgment that Barnhart was facing criminal charges at the time of the revocation hearing. Barnhart cannot, however, attribute to the district court a single statement suggesting that the revocation decision was based, even in part, on the pending charges. Even though it is apparent that an arrest during Barnhart's probationary period might violate the first condition of his probation ("[y]ou shall refrain from violation of any [state] law...."), *see* note 1, *supra,* the record is clear that the district court

---

3. Although *Scarpelli* and *Romano* speak of "written statements," *Scarpelli,* 411 U.S. at 786, 93 S.Ct. at 1761; *Romano,* 471 U.S. at 612, 105 S.Ct. at 2258, the *Romano* Court noted that a sentencing court's memorandum as well as a transcript of a revocation hearing may "provide[ ] the necessary written statement explaining the evidence relied on and the reason for the decision to revoke probation." *Id.,* 471 U.S. at 612, 105 S.Ct. at 2258. Here, the district court's statement, as made and transcribed at the revocation and sentencing hearing, clearly and unequivocally attributed the revocation decision solely to Barnhart's reporting violations.

focused not on Barnhart's three arrests and pending charges, but rather on Barnhart's violation of the condition requiring him to report to his probation officer as directed. Thus, Barnhart's claim rests on no more than mere conjecture that, because the district judge was aware of the criminal charges pending against Barnhart, his decision to revoke Barnhart's probation must have been based on that information.

In light of the district court's clear statement that revocation was based solely on Barnhart's failure to report, and that revocation is fully justified on that basis alone, we are unwilling to join Barnhart in unfounded speculation regarding the district court's decision to revoke probation. Thus, we conclude that Barnhart's probation was justifiably revoked at his revocation hearing.[4]

### III.

■ Barnhart claims that, in violation of his due process rights, the district court's sentence of five years was based on his pending criminal charges, and that the alleged lack of notice regarding the charges deprived him of the opportunity to address them at the time of sentencing.

Federal Rule of Criminal Procedure 32.1, which governs revocation of probation, is silent on the question of sentencing following the decision to revoke. *See* note 2, *supra*. However, upon revocation the district court is authorized by statute to

> require [the probationer] to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.

18 U.S.C.A. § 3653 (1985), *repealed by* Pub.L. 98–473, Title II, §§ 212(a)(1) and (2), 235(a)(1) (November 1, 1987) (repeal applicable only to offenses committed after November 1, 1987) (West Supp.1992). Here, when the district court placed Barnhart on probation in 1986 for violating 18 U.S.C. § 500 (forging, etc., postal money orders), the court suspended imposition of Barnhart's sentence. Upon revocation of probation on that count in 1992, the district court sentenced Barnhart to five years imprisonment, the maximum sentence allowable under 18 U.S.C. § 500. Because this sentence "might originally have been imposed," pursuant to 18 U.S.C.A. § 3653, the district court did not exceed its discretionary authority when it sentenced Barnhart to five years imprisonment.

Moreover, the district court stated explicitly its reasons for imposing that sentence:

> When I sentenced this man back in 1986, I told him that he was getting a chance to put his life together again, and he had a long record prior to that, and he hasn't put his life together at all.... [His previous five years in prison] didn't seem to do the trick. I thought maybe that would, and it didn't. And the best thing for him is that he be separated from society, and that's what I'm doing today.

(A. 26).

As we discussed in the context of the district court's revocation decision, Barnhart's due process "sentencing" claim would require us to speculate that the district court sentenced Barnhart to five years imprisonment for reasons (the pending charges) that the district court at no time articulated. Nothing appears in the record

---

**4.** Even if we were to remand this case to the district court in order to afford Barnhart an opportunity to address the pending criminal charges, Barnhart offers us no basis for concluding that a "hearing" on those charges would cure any alleged harm. Indeed, when asked at oral argument how he would challenge or explain the pending charges if the case were remanded, Barnhart's counsel could only answer generally, "[W]e're going to show the circumstances regarding the arrests, we're going to show, bring in evi- bring in witnesses, evidence that these arrests may not have violated the conditions of his probation."

Counsel did not identify with specificity the circumstances, the witnesses or the evidence which would defeat a charge of a probation violation. More important, as we have discussed in text, is the fact that the arrests were not the basis of probation revocation. Probation was properly revoked because Barnhart violated its terms by failing to report on three separate occasions. Circumstances, witnesses and evidence regarding the subsequent criminal charges simply do not speak to that unchallenged violation and could not, therefore, affect the district court's decision.

to even suggest reliance by the district court on the pending charges. Indeed, in light of the court's affirmative and explicit explanation for the sentence imposed, we are unwilling to engage in the unsupported speculation urged upon us by Barnhart.

Moreover, even if we were to assume, *arguendo*, that the district court had given some consideration to Barnhart's pending criminal charges, we would be hard pressed to identify a due process violation on the record before us. Barnhart, when originally sentenced, received a pre-Guidelines sentence. The character of that sentence did not change after his probation was revoked because, as noted above, the district court, under 18 U.S.C.A. § 3653, could have imposed any sentence which it might originally have imposed.

In pre-Guidelines cases a sentencing judge, in the judge's discretion, may consider a wide range of factors when imposing sentence directly after conviction. "[A] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." [5] *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972).

In *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), the Supreme Court provided us with further instruction as to a district court's broad discretion in imposing a direct sentence, holding that a district court may base its sentencing determination on a defendant's "untruthfulness under oath," *id.* at 53, 98 S.Ct. at 2617, even where the defendant has not been indicted, tried, or convicted of perjury. *Id.* at 52–55, 98 S.Ct. at 2616–18. Indeed, *Grayson* cited with approval *Williams v. New York*, 337 U.S. 241, 250, 69 S.Ct. 1079, 1084, 93 L.Ed. 1337 (1949). In that case, the sentencing judge considered an offender's history of prior antisocial behavior, including burglaries for which the offender had not been duly con-

victed. Even in Guidelines cases, we have held that evidence suppressed in violation of the Fourth Amendment may nevertheless be considered in determining appropriate guideline ranges. *United States v. Torres*, 926 F.2d 321, 324–25 (3d Cir.1991).

Moreover, under pre-Sentencing Guidelines law, a district court is not obligated to give its reasons for imposing a specific sentence, *United States v. Felder*, 744 F.2d 18, 20 (3d Cir.1984) (citing *United States v. Del Piano*, 593 F.2d 539, 540 (3d Cir.), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979)), although a district court judge who sentences a defendant under the Sentencing Guidelines must state in open court the reasons for imposition of a particular sentence. *United States v. Georgiadis*, 933 F.2d 1219, 1222–23 (3d Cir. 1991).

Even on the unsupported assumption that Barnhart's arrest record influenced the district court's sentencing decision, Barnhart has failed to direct us to any "procedural defect" which might constitute a violation of due process. We have established a two-part test for determining whether a sentence imposed after conviction (as distinct from a sentence imposed after probation revocation) has been imposed in violation of a defendant's due process rights. We have asked: "(1) has misinformation of a constitutional magnitude been given to the district court; and (2) has that misinformation been given specific consideration by the sentencing judge?" *United States v. Matthews*, 773 F.2d 48, 51 (3d Cir.1985) (citing *United States v. Janiec*, 464 F.2d 126, 129 (3d Cir.1972); *United States v. Tucker*, 404 U.S. at 446–47, 92 S.Ct. at 591–92 (1972)). *See also United States v. Fogel*, 829 F.2d 77, 90 (D.C.Cir.1987) (to prove a due process violation, defendant must show that challenged information "is (1) false or unreliable, and (2) demonstrably made the basis for the sentence"); *United States v. Took-*

---

5. Although direct sentencing includes the added feature of presentence review, which affords a defendant an opportunity to challenge or explain any matters which he feels are not appropriately set forth, *see* Fed.R.Crim.P. 32, in the absence of precedent or Rule of court, we decline to require yet another presentence report upon revocation of probation. Indeed, the record here discloses that the district judge had reviewed Barnhart's original presentence report before imposing sentence on revocation of probation.

er, 747 F.2d 975, 978–80 (5th Cir.1984), (defendant bears burden of showing that information is inaccurate and the court relied upon it), *cert. denied,* 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985).

■ Thus, in order to sustain a due process claim in the context of a *direct* sentence, a defendant must show that he was denied an opportunity to address allegedly false information presented to the sentencing judge. *See Matthews,* 773 F.2d at 51; *Fogel,* 829 F.2d at 90. However, where the defendant "had an adequate opportunity to examine and correct controverted information and request an evidentiary hearing," but failed to do so, "the error is counsel's and not the court's." *Matthews,* 773 F.2d at 51.

The *Matthews* formula stems, of course, from considerations relevant to a sentence imposed directly after a conviction, and only by analogy could it be equated to a sentence, such as Barnhart's, which was imposed after revocation of probation. Assuming that no substantive difference distinguishes these two sentencing settings, a matter which we do not decide here, Barnhart has failed to demonstrate that misinformation of a constitutional magnitude had been provided to the district court and that the court had given such misinformation specific consideration. Thus, even were we disposed to merge sentencing considerations upon probation revocation into the sentencing doctrine applicable directly after conviction, Barnhart would have failed to carry the burden of proof required of him.

We have noted in particular that, although Barnhart's counsel explicitly inquired at sentencing whether the district court was "aware that Mr. Barnhart is facing state charges," he nevertheless declined to press this issue after the district judge informed him that he was, indeed, aware of that fact. Despite the "adequate opportunity" available at that moment, Barnhart did not challenge the pending charges in any respect, let alone as comprising "misinformation of a constitutional

magnitude." *Matthews,* 773 F.2d at 51. Nor did he ask the district court if it had considered the charges in imposing sentence. He did not attempt to "correct" information regarding the pending charges, and he did not request an evidentiary hearing.

Where the record shows that the defendant, his counsel and the court all knew of the pending criminal charges, and where, as here, nothing precluded Barnhart from addressing those charges at the probation revocation hearing, Barnhart cannot now be heard to complain that he was denied the opportunity to do so and that his due process rights were therefore violated. This is particularly so where the district court explicitly stated its reason for imposing the five-year sentence.

IV.

We will affirm the district court's order of March 13, 1992 revoking Barnhart's probation and sentencing Barnhart to five years imprisonment.[6]

**6.** As we previously noted, the district court's Probation/Commitment order also provided that Barnhart receive treatment for alcohol abuse while incarcerated.