**UNITED STATES of America,**

v.

**Jason SCHWYHART, Appellant.**

No. 03–2940.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 14, 2005.

Decided Feb. 16, 2005.

Frederick E. Martin, Office of United States Attorney, Williamsport, PA, for Appellee.

Thomas A. Thornton, Office of Federal Public Defender, Harrisburg, PA, for Appellant.

Before SLOVITER, AMBRO and ALDISERT, Circuit Judges.

## OPINION

SLOVITER, Circuit Judge.

### I.

Appellant Jason Schwyhart appeals from the Judgment in a Criminal Case of the District Court revoking his supervised release. Schwyhart was sentenced to three years of supervised release following his conviction in the Middle District of Pennsylvania of conspiracy to commit assault for which he was sentenced to sixty months' imprisonment. The term of supervised release was to run concurrently with the term imposed for another criminal conviction in the United States District Court for the Western District of Missouri. Schwyhart's supervised release in both jurisdictions was subject to a number of conditions including, in relevant part, that he refrain from committing any other crime under local, state, or federal law.

After Schwyhart completed his term of imprisonment in March 2002, he returned to his home in Arkansas, and his case was transferred to the Western District of Arkansas where federal authorities in that jurisdiction were to oversee his concurrent terms of supervised release. In July, Schwyhart discontinued his required contact with the Probation Officer. Authorities obtained an arrest warrant against Schwyhart for violation of his supervised release. In January 2003, Schwyhart was a passenger in a car with Gus Schultz and Jillian Miner that was stopped at a checkpoint. When Missouri Deputy Sheriff Michael Bell requested identification, Schwyhart presented him with someone else's social security card, and during a pat down search, Schwyhart broke free and fled. Bell pursued, spraying him with pepper spray several times. After Schwyhart got caught in some brush, he turned to face Bell, challenged him, and according to Bell, Bell struck Schwyhart on the inside of his right knee, and Schwyhart fell to the ground. At this point, Bell handcuffed Schwyhart, and together with Sergeant Tim Rinehart searched him. Rinehart discovered a switchblade knife in his pocket. Possession of a switchblade is a crime in Missouri. Mo. Ann. Stat. § 571.020(1)(7). Schwyhart was taken to the St. John's Medical Center for medical attention because he had sustained several minor injuries in his flight.

The United States District Court for the Western District of Missouri revoked Schwyhart's supervised release granted by that court, and sentenced him to a three-year term of imprisonment. The government sought revocation of Schwyhart's supervised release in the Middle District of Pennsylvania on the single claim that his violation of the Missouri criminal statute prohibiting possession of a switchblade knife transgressed the general condition of his release that he not commit any federal, state, or local crime. At a preliminary hearing the District Court found that the order revoking supervised release in the Western District of Missouri provided probable cause of a violation, and scheduled a revocation hearing for May 9, 2003.

Prior to the May 9 proceeding, Schwyhart filed a Motion Requesting Issuance of Subpoenas for nine individuals to testify at his revocation hearing. The District Court sent him blank subpoenas, but held in abeyance the issue of whether any of the testimony of his proposed witnesses would

be admissible. Schwyhart claims he could not mail the subpoenas because he was in prison and could not purchase stamps. His request for a continuance was denied pending an *ex parte* hearing with Schwyhart to determine the admissibility of the proffered testimony.

On May 9, 2003, the government presented its case, primarily the testimony of Officers Bell and Rinehart. Following an *ex parte* discussion with Schwyhart about the subpoena, at which Schwyhart made a proffer with respect to each witness, the District Court denied the request, finding, based on Schwyhart's proffers, that none of the witnesses could provide any testimony relevant to the sole issue in the hearing-namely, whether or not he illegally possessed a switchblade during the incident in Missouri. To the extent Schwyhart maintained that the testimony of the government's witnesses would impeach them by contradiction, the District Court found that the impeachment was entirely collateral and inadequate to undermine the credibility of the witnesses on the issue of his possession of a switchblade in Missouri.

After finding that Schwyhart had possessed a switchblade knife in violation of Missouri law, the District Court revoked his supervised release and sentenced him to twelve-months imprisonment, to run consecutively with the term of imprisonment imposed by the District Court for the Western District of Missouri following revocation of his supervised release there. This appeal followed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

Schwyhart claims that the District Court's refusal to grant his motion to subpoena witnesses violated his due process rights under the Fifth Amendment and Fed.R.Crim.P. 32.1. He argues that the District Court's finding that the testimony

of his witnesses was inadmissible effectively denied him the opportunity to put on a case. This argument confounds the requirements of due process with the trial court's discretion to control the presentation of testimony. Our review of the due process aspect of his claim is plenary. *United States v. Barnhart*, 980 F.2d 219, 222 (3d Cir.1992).

Although the revocation of suspended release proceeding is not a criminal prosecution, its potential impact on the putative releasee's liberty requires that it meet " 'minimum requirements of due process.' " *Id.* (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)). These due process requirements are less stringent than those required in a criminal prosecution, and the range of admissible evidence is broader. *United States v. Loy*, 237 F.3d 251, 260 (3d Cir. 2001). As we recognized, the Supreme Court has held these minimum requirements to include:

> "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body ... and (f) a written statement by the factfinder as to evidence relied on and reasons for revoking [probation or] parole."

*Barnhart*, 980 F.2d at 222 (quoting *Scarpelli*, 411 U.S. at 786, 93 S.Ct. 1756) (brackets in *Barnhart*). Fed.R.Crim.P. 32.1(b)(2) codifies these due process requirements and applies them directly to proceedings for the revocation of supervised release:

(2) Revocation Hearing. Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:

(A) written notice of the alleged violation;

(B) disclosure of the evidence against the person;

(C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear; and

(D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel.

Rule 32.1(b)(2)(C), on which Schwyhart relies, cannot create a blanket right to present any testimony on any topic whatsoever; rather, the proffered testimony must, at minimum, fall within the bounds of relevance. *See* Fed.R.Evid. 402.

The record demonstrates that the District Court extended careful, thoughtful, and painstaking protection to Schwyhart's procedural rights by conducting an *ex parte* hearing with him to elicit and understand what he expected each of his proffered witnesses to say. This hearing fully constituted the due process guaranteed to Schwyhart. The District Court decided, within its sound discretion, that none of the proffered testimony was probative of whether or not Schwyhart possessed a switchblade knife in violation of Missouri law, and that whatever inconsistencies he could raise in the government's case were collateral and ineffective to undermine it. We find no error in the actions of the District Court in this respect as Schwyhart has no right to present irrelevant testimony.

■ We review a District Court's evidentiary rulings for abuse of discretion.

*Geders v. United States,* 425 U.S. 80, 86, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); *United States v. Pantone,* 609 F.2d 675, 682–84 (3d Cir.1979). None of Schwyhart's witnesses would controvert any of the evidence that he illegally possessed a switchblade. Instead, Schwyhart sought to undermine the credibility of the government's witnesses on the switchblade issue by bringing out collateral inconsistencies. We have recognized the doctrine of impeachment by contradiction, *Pantone,* 609 F.2d at 683–84, but it is limited by the collateral issue rule, which provides that evidence is inadmissible if it is offered solely for the purpose of contradiction and no other; that is, " 'one may not contradict for the sake of contradiction; the evidence must have an independent purpose and an independent ground for admission.' " *United States v. Payne,* 102 F.3d 289, 294 (7th Cir.1996) (quoting *United States v. Kozinski,* 16 F.3d 795, 806 (7th Cir.1994)). The District Court acted within its discretion in holding that the proffered testimony was collateral, and essentially irrelevant.

For example, even if Jillian Miner, one of two people who were in the car with Schwyhart on the night in question, testified that she did not notice a knife in Schwyhart's pocket, App. at 254–55, the fact that she had not seen a knife in his pocket would not undermine the conclusion that he had one in his pocket. Similarly, Schwyhart's bid to summon the doctor and nurse at St. John's Medical Center who treated him was based on his hope that their account of his injuries would contradict the testimony of Officers Bell and Rinehart that Bell struck him on the inside of his right knee, and would thus undermine their credibility generally. The District Court reasonably concluded that this was inadmissible impeachment on a collateral issue, and "contradiction simply for the sake of contradiction." App. at 256.

The District Court rejected Schwyhart's bid for a subpoena for Larry Jacques, a Green County, Missouri jail inmate, who he asserted would testify to the knee injuries for the same reason, and its decision to do so was likewise sound.

■ The District Court acted well within its discretion to exclude further testimony by Officers Bell and Rinehart as irrelevant and collateral with respect to the switchblade. Schwyhart asserts that the District Court abused its discretion by refusing to allow him to have Deputy Bell demonstrate the manner in which he struck Schwyhart while apprehending him. The admission of demonstrative evidence is at the discretion of the trial court. *United States v. Rockwell*, 781 F.2d 985, 986 n. 3 (3d Cir.1986). Because the nature of Schwyhart's arrest-related injuries is not relevant to whether he possessed a switchblade, the District Court was well within its discretion in refusing to permit the demonstration.

Finally, Schwyhart's proffers with respect to Deputy United States Marshal Michael Walker and Deputy Jessup from the Stone County Sheriff's Department covered a plethora of miscellaneous issues, but none bearing on whether he possessed a switchblade or whether the testimony of Bell and Rinehart with respect to the switchblade was credible. The District Court's exclusion of testimony by Walker and Jessup was within its discretion.

The District Court fully considered every witness Schwyhart sought to call, and concluded that none could offer any testimony in any way relevant to his possession of a switchblade knife. It did not abuse its discretion to exclude them nor did it offend due process.

## III.

■ Schwyhart also contends that the District Court's denial of his request to have stand-by counsel take over reading his "closing argument" offended his right to counsel under the Sixth Amendment and Fed.R.Crim.P. 32.1(b)(2)(D).[1] This claim must also fail. In his argument, Schwyhart advanced a number of complaints about the District Court's denial of his Motion for Subpoenas, but he also veered widely across the topic of his mistrust of the government and the judicial system. Though the record of the hearing does not show it, the briefs of each party indicate that Schwyhart was reading this statement from a text he had prepared in advance. His statements ranged from what he believed to be the personal biases of the United States Attorney to the Star Chamber to drug enforcement. He sprinkled his statement with assertions of his good character, and complaints that he had not been able to present his case. After invoking Nietzsche to call the government "the coldest of monsters," he stated "I'll let my attorney say what I believe about what the government—what rights I allegedly have in this democracy." App. at 235. The Court declined to allow the standby counsel to pick up reading where Schwyhart left off.

1. While Fed.R.Crim.P. 32.1(b)(2)(D) codifies the right to counsel in a revocation proceeding, representation is by no means compulsory. There is no question that one can also waive the right. The record plainly records a knowing, intelligent, and voluntary waiver of this right by Schwyhart following a thorough colloquy with Judge McClure. Supp.App. at 13–24. In any event, the validity of Schwyhart's waiver is not contested. Furthermore, Schwyhart gave the statement in question during the sentencing portion of the hearing, after the District Court revoked his supervised release. The government had concluded its argument as to the appropriate sentence, and the District Court gave Schwyhart an opportunity to be heard on what sentence he believed appropriate. App. at 226. Thus, this was not a "closing argument," but might more properly be termed a sentencing argument although it contained little material addressed to sentencing.

As the Supreme Court has said, a *pro se* defendant "does not have a constitutional right to choreograph special appearances by counsel." *McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Nor does the Sixth Amendment require a trial court to allow hybrid representation in which defendant and attorney essentially serve as co-counsel. *Id.* Thus, at this late stage of the proceeding, it was neither inappropriate nor unconstitutional for the District Court to deny Schwyhart's request to have stand-by counsel read the remainder of his statement.

### IV.

For the reasons set forth, we will affirm the Judgment of Conviction of the District Court.