

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-3-2007

# USA v. Pinkney

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3959

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Pinkney" (2007). *2007 Decisions.* Paper 1818.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1818

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3959
_____

UNITED STATES OF AMERICA

v.

GEORGE PINKNEY,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 97-cr-00139)
District Judge:  Honorable John R. Padova
_____

Submitted Under Third Circuit LAR 34.1(a)
December 13, 2006

Before:  FISHER, CHAGARES and GREENBERG, *Circuit Judges*.

(Filed:  January 3, 2007)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

George Pinkney appeals from the District Court's order revoking his supervised

release after finding that he violated one of its conditions by committing a state crime.

The Court issued judgment from the bench, sentencing Pinkney to a 24-month sentence of

incarceration, to be followed by a 5-year term of supervised release. On appeal, Pinkney

alleges his right to procedural due process was violated because the District Court, in

issuing judgment from the bench, did not provide sufficient justification for its findings

and did not issue a written statement of the reasons for the revocation of his supervised

release. For the reasons stated below, we will affirm the judgment of the District Court.

I.

As we write only for the parties, we forgo a lengthy recitation of the factual

background of this case. After serving a sentence of 90 months imprisonment, with credit

for time served, for conspiracy to distribute cocaine base, 21 U.S.C. § 846, and several

related crimes to which he pleaded guilty, Pinkney was released from prison and began a

10-year term of supervised release. On July 26, 2005, a little over a year after Pinkney

began this term, his probation officer filed a petition with the District Court, alleging that

Pinkney had violated conditions of his supervised release. Specifically, the petition

alleged that Pinkney had made threatening statements amounting to "Terroristic Threats"

under Pennsylvania law, 18 Pa.C.S. § 2706, and, in so doing, had violated a standard

condition requiring that he "not commit another Federal, state or local crime . . . ."

The District Court held a hearing on the alleged violation on August 9, 2005, and a

court reporter transcribed verbatim the statements made at those proceedings. At the

outset of the hearing, the District Court elicited the precise nature of the alleged violation:

> THE COURT: Ms. Winter, with respect to [petition paragraph] A, the
> condition that was allegedly violated states that, "Defendant shall not
> commit another federal, state, or local crime." What crime is the

2

Government asserting that this defendant committed while on supervised release?

MS. WINTER: Terroristic threats, your Honor. Threats to kill someone.

The Court went on to state its understanding that no criminal charge had been issued with respect to these allegations. It recognized, however, that "of course, the Government can prove here and now that he [Pinkney] committed a crime, and that would be a violation, and that's what the Government intends to do." Under Pennsylvania law, "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to . . . commit any crime with intent to terrorize another . . . ." 18 Pa.C.S. § 2706(a)(1).

Pinkney's alleged terroristic threats were made in connection with a dispute Pinkney had with his former girlfriend, Markeeta Holmes over an automobile. Holmes had bought the car while she and Pinkney were still dating and agreed to allow Pinkney to use the car as long as he made the monthly payments on the car. After they were no longer dating, Holmes refused Pinkney access to the car. This apparently made Pinkney irate. Holmes testified that Pinkney once approached her with a friend while she was in possession of the car and that a heated argument ensued. In the course of the argument, Holmes further testified, Pinkney became aggressive and told his friend to "get his piece" and then stated "you dead, you done. You know you better not go to work, I'm going to get you." Holmes also alleged that Pinkney made similarly violent threats to her 11-year-

old son at the time of the incident, Pinkney telling the boy "because he got involved, he was dead too."

Holmes reported the incident to police, and on the following day, July 21, 2005, she obtained an ex parte temporary Protection from Abuse order (PFA), a copy of which was submitted to Pinkney's probation officer. The probation officer met with Pinkney in person the next day, gave Pinkney a copy of the PFA, and instructed him to cease all contact with Holmes. Pinkney denied attempting to make any further contact with Holmes after the entry of the PFA, but numerous witnesses at the revocation hearing testified to the contrary.

Holmes' daughter, Markeeta Khalis, and Holmes' 11-year-old son, both testified that Pinkney had tried to contact Holmes through them. Khalis testified that Pinkney had made repeated phone calls to her, in which Pinkney allegedly threatened "you gonna make me slap the [expletive] out of you." Holmes' son testified, by way of stipulation, that Pinkney had appeared at the Holmes house on July 24 looking for Holmes. At Ms. Holmes' direction, the son told Pinkney she was not home and he left. Furthermore, Pinkney's probation officer testified that she had received a "frantic" phone call from Holmes on July 26, in which Holmes related that Pinkney had been following her car and making threatening gestures.

Defense counsel for Pinkney called as a witness for Pinkney a co-worker of Holmes who described Holmes' jealous behavior at the workplace with respect to Pinkney. Defense counsel also elicited testimony from Pinkney's probation officer. In

4

that testimony, the probation officer conceded that Pinkney had left a message on the morning of July 27 complaining that Holmes had been lingering outside his house. Testifying on his own behalf, Pinkney denied that he had ever threatened Holmes or anyone else in her family.

After hearing all testimony and following the introduction of evidence, the Court announced its ruling:

> THE COURT: Okay. With respect to the violation that was set out in paragraph B, the Government has proved its case by a preponderance of the evidence. The Court adjudicates the defendant in – I'm sorry A, not B, A – the Court adjudicates this defendant in violation, as alleged in the original violation petition, paragraph A [stating "Defendant shall not commit another federal, state, or local crime."].

The Court further elaborated on the justification for its ruling when it told Pinkney "[y]our violations are serious and substantial violations. They are multiple violations in a very, very short period of time. You have intimidated members of the public . . . ." Pursuant to these findings, the Court revoked Pinkney's supervised release and imposed a sentence of 24 months imprisonment to be followed by a 5-year term of supervised release. The Court also recommended that the Bureau of Prisons provide Pinkney with mental health treatment in the form of an anger management program. The Court concluded the proceedings by reminding Pinkney of his right to appeal the judgment of sentence he had just imposed. It is from this final judgment that Pinkney now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Pinkney alleges the District Court violated his right to procedural due process by failing to provide a written statement of the reasons for revoking his supervised release. Moreover, insofar as the District Court did provide oral justification for its findings, Pinkney alleges this oral justification was too deficient to comport with the minimum requirements of procedural due process. Ordinarily, we review de novo a claim that procedural due process was denied during revocation proceedings. *United States v. Barnhart*, 980 F.2d 219, 222 (3d Cir. 1992). However, because Pinkney failed to raise any objection before the District Court, we review the proceedings for plain error.[1] Under this standard, "we may reverse only if we find error . . . so serious as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *United States v. Boone*, 279 F.3d 163, 173 (3d Cir. 2002) (citation omitted). We find no such error occurred in this case. Moreover, even if Pinkney had properly preserved his due process claim for appeal, and our standard of review were more rigorous, Pinkney's claim would still fail on the merits.

Although a supervised release revocation hearing, like a probation or parole hearing, is not a stage of criminal prosecution, *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), such proceedings are still subject to "minimum requirements of due process." *Id.*

_____

[1] At no point before the District Court did counsel for Pinkney object to the form or substance of the revocation proceedings and at no point did he ask for clarification on any matter. Under nearly identical circumstances, the First Circuit Court of Appeals observed that such a failure "deprive[s] the district court of the opportunity to consider and rule on the issue, and has thus deprive[s] us of a ruling which we can effectively review." *United States v. Whalen*, 82 F.3d 528, 531 (1st Cir. 1996). We agree.

6

at 786; *see also Black v. Romano*, 471 U.S. 606, 612 (1985) (citing *Gagnon*).  Among those requirements is "a written statement by the factfinder as to evidence relied on and reasons for revoking parole."  *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).[2]  The so-called "written statement" requirement prescribed by *Morrissey* provides a basis for review and is intended to encourage accuracy in factfinding.  *Black*, 471 U.S. at 613-14.

Pinkney suggests that the District Court's decision not to set forth its reasoning in a written memorandum resulted in a violation of due process.  However, our Court has recognized the majority rule that a transcription of the oral statements of the trial judge indicating reasons for revocation may satisfy the written statement requirement. *Barnhart*, 980 F.2d at 233 n.3; *see also United States v. Copeland*, 20 F.3d 412 (11th Cir. 1994); *United States v. Gilbert*, 990 F.2d 916 (6th Cir. 1993); *United States v. Copley*, 978 F.2d 829 (4th Cir. 1992); *United States v. Barth*, 899 F.2d 199 (2d Cir. 1990); *United States v. Yancey*, 827 F.2d 83 (7th Cir. 1987); *Morishita v. Morris*, 702 F.2d 207 (10th Cir. 1983); *but see United States v. Smith*, 767 F.2d 521 (8th Cir. 1985); *United States v. Lacey*, 648 F.2d 441 (5th Cir. 1981).  Accordingly, in holding with our own precedent

---

[2]The full panoply of procedural due process requirements set forth in *Morrissey v. Brewer* includes:  (a) a written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. 408 U.S. 471, 489 (1972).  Of these requirements, only the "written statement" requirement is directly at issue in this case.

7

and that of several sister circuits, we find the District Court's decision not to issue a separate written memorandum in this case did not violate Pinkney's right to procedural due process. The oral statements on record provide an adequate basis for our review and the grounds for the District Court's ruling are readily apparent from the verbatim transcript of the revocation proceedings.

As already described, the Court carefully established at the outset of the hearing that the state violation under review was "Terroristic Threats" under Pennsylvania law. In addition, Pinkney admitted three of the four violations with which he was charged in the probation office's petition, leaving as the sole contested issue the question of whether he had committed a state crime. Finally, Pinkney's alleged commission of the state offense of "Terroristic Threats" was the single theory on which the Government proceeded throughout the hearing, and all of the testimony given at the hearing was clearly aimed at establishing the predicate conduct for such a violation. Consequently, there is no question that the Court and all parties understood that the central issue being adjudicated at the hearing was whether Pinkney had made "Terroristic Threats" in violation of Pennsylvania law.

Pinkney observes that the District Court did not make specific findings as to either the actus reus of the violation ("communicate . . . a threat to commit any crime of violence") or the mens rea of the crime ("with intent to terrorize"). However, revocation hearings are informal proceedings "more flexible than a criminal trial," *Morrissey*, 408 U.S. at 489, and "although [supervised release] violations often lead to reimprisonment,

8

the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt." *Johnson v. United States*, 529 U.S. 694, 700 (2000). Given the clear distinctions between revocation hearings and criminal trials, we see no justification for requiring specific findings as to each element of a crime so long as the reasons for revocation and the evidence relied upon by the district court are discernible from the transcribed record. *See Black*, 471 U.S. at 613 (["W]hen other procedural safeguards have minimized the risk of unfairness, there is a diminished justification for requiring a judge to explain his rulings.") (citation omitted).

Here the District Court formally stated its conclusion that Pinkney had violated the condition of his supervised release requiring he not commit a state crime. In addition, the Court made a finding on the record that Pinkney had "intimidated members of the public." While this finding is somewhat imprecise and does not directly track the language of the Pennsylvania statute, it sufficiently conveys the Court's conclusion that a preponderance of the evidence demonstrated that Pinkney had committed "Terroristic Threats" as defined under the statute. Moreover, we can easily infer that the basis for this conclusion was the Court's reliance on the testimony given, as witness testimony was nearly the entire substance of the proceedings. To the extent Pinkney challenges the credibility of the testimony upon which the District Court relied, he misconstrues the role of our Court as an appellate tribunal. We are not in a position to review the credibility determinations of the District Court as factfinder in this case. *Government of V.I. v.*

9

*Gereau*, 502 F.2d 914, 921 (3d Cir. 1974) ("It is the law of this Circuit, as well as many others, that a factfinder's determination of credibility is not subject to appellate review.") (citations omitted). *See also United States v. Whalen*, 82 F.3d 528, 531 (1st Cir. 1996) (holding credibility determinations made by the district court at a supervised release revocation hearing not reviewable on appeal).

III.

The due process clause under these circumstances only required the District Court to provide "fair notice to the defendant of the reasons for the revocation . . . [and] an adequate record from which to build an appeal." *Morrissey*, 408 U.S. at 490. As the District Court's exposition of its reasoning and conclusion was clear and the transcribed record clearly indicates the basis of the Court's ruling, no error occurred in this case and there was no violation of Pinkney's procedural due process rights. We will therefore affirm the judgment of the District Court.